Michael Mark **MORGAN**, Appellant,

v.

**COMMONWEALTH of Kentucky,**
**Appellee.**

**No. 92–SC–474–MR.**

Supreme Court of Kentucky.

June 23, 1994.

Lambert and Leibson, JJ., concurred in result only.

Stumbo, J., dissented and filed opinion.

Rebecca Ballard Diloreto, Dept. of Public Advocacy, Frankfort, for appellant.

Chris Gorman, Atty. Gen., Paul Gilbert, Rickie L. Pearson, Asst. Atty. Gen., Criminal Appellate Div., Frankfort, for appellee.

SPAIN, Justice.

The appellant, Michael Mark Morgan, was tried and convicted in November, 1989, for the murder of his wife, Gretchen Ann Morgan, on April 4, 1989, and sentenced to thirty-eight years' imprisonment. Upon appeal to this Court, the conviction and sentence were reversed on April 11, 1991, because the jury was told by a police officer that there was a polygraph instrument in the room where the appellant was interrogated. Although there was no testimony that the appellant was administered a lie detector test, let alone any purported test results, the Majority of the Court found prejudicial error. *Morgan v. Commonwealth*, Ky., 809 S.W.2d 704 (1991).

Upon retrial, Morgan was again found guilty of intentional murder and given a life sentence on June 2, 1992. This time the word "polygraph" was never mentioned to the jury, but Morgan now appeals contending that the trial court erred in refusing to in-struct the jury on the lesser-included offense of first-degree manslaughter based upon extreme emotional disturbance. We disagree and affirm.

April 3, 1989, was Michael Morgan's thirtieth birthday so he took the day off from work and was at home when Gretchen returned home from her office at about 5:00 p.m. The two of them drank champagne and Gretchen surprised Michael with a birthday gift of round-trip airline tickets to Florida for their anniversary later in the month. At about 7:00 p.m. Michael left home and picked up his mistress, Lisa Hood, taking her out to dinner by prior arrangement. After eating, Lisa took Michael to a surprise birthday party for him and another young man at the home of a mutual friend.

Michael drank some wine with dinner and also received a bottle of brandy as a gift. He drank at least some of it with water while at the party from about 8:30 to 9:00 p.m. until about 1:00 to 3:00 a.m. Upon leaving the party, Michael and Lisa went to her house where they had sex and slept together. Michael later told the police that he went home at about 3:00 a.m., but Lisa told them it was 5:00 to 5:30 a.m.

Michael first told the police that Gretchen was asleep upstairs in their bedroom when he returned home. He said that she had left him a note asking him to let the dog out, which he did, after which he woke Gretchen. He then said that Gretchen asked him if he had a nice time, that he responded "yes," and that they kissed. Michael further stated that they agreed on a wake-up time and he then went downstairs to sleep on the couch so he could elevate his knee, which had recently undergone surgery.

In his first statement, Michael also told police that Gretchen awakened him later in the morning, that he showered, dressed, went to a gym to exercise his knee, and then went to work.

In his second statement, given some six hours after the first statement, Michael admitted "hurting" his wife after they got into an argument before he went to work. He stated that he didn't remember "... grab-

bing anything ... or having anything in [his] hands ... or [his] pockets or anything."

Michael further stated that at about 2:00 p.m., while he was at work, Gretchen's employer had called asking him if he knew where Gretchen was, to which he answered in the negative. The employer called again shortly before 5:00 p.m., whereupon Michael left work and returned home.

Michael stated that upon returning home he found Gretchen's body on their bed upstairs, lying face down, with stab wounds in the back, and she was not breathing. At approximately 6:15 p.m. on April 4, 1989, the Jefferson County Police received a 9–1–1 call from Michael Morgan stating that his house had been broken into and that his wife was not breathing.

The police found the body lying face down on the bed with twenty-four stab wounds to her back. The autopsy showed she had a blood alcohol level of .05 percent. There were clothes and a jewelry box filled with jewelry strewn on the bedroom dresser and floor. Downstairs in the kitchen a birthday cake was in pieces on the floor. Various papers, bills, and receipts littered a kitchen desk, and Gretchen's purse was open atop the kitchen table with its contents spilled.

At trial, the prosecutor introduced the Morgans' credit card and bank accounts reflecting that money had been spent for flowers and other gifts for Lisa Hood. Gretchen's sister testified that she had lived with the Morgans during the summer of 1988, during which time Michael asked her to hide the bills from Gretchen and to give them to him. He told her the reason was that he was going to buy a Gucci watch for Gretchen and did not want her to see the bill. The sister stated she had never seen any such watch.

Appellant, Michael Morgan, did not testify at trial but nevertheless requested a jury instruction on first-degree manslaughter based on extreme emotional disturbance. The trial court refused the request, commenting that there was nothing in the evidence to support it and that he would give the same instructions as were given at the first trial; viz., intentional murder and wanton murder. The jury then found Morgan guilty of intentional murder, just as the jury at the first trial had done.

We find no error on the part of the trial court under the evidence adduced in this case. A murder instruction need not contain an element negating extreme emotional disturbance absent something in the evidence to suggest that the defendant was so acting, thereby affording room for reasonable doubt in that respect. *Gall v. Commonwealth*, Ky., 607 S.W.2d 97, 109 (1980). An instruction on voluntary manslaughter is proper "only in those instances when there is evidence that will support the giving of the instruction." *Elmore v. Commonwealth*, Ky., 520 S.W.2d 328, 331 (1975). Voluntary manslaughter has been replaced by manslaughter in the first degree, which is defined by KRS 507.030. As this Court said in *Gall* citing *Brown v. Commonwealth*, Ky., 275 S.W.2d 928, 933 (1955), "We have adopted the rule that where the evidence is wholly circumstantial and the facts lead inescapably to the conclusion that the crime, whoever committed it, was murder, there being no evidence of a struggle or other unusual circumstances from which the jury might infer a lesser degree of the crime, the accused is not entitled either to a manslaughter or self-defense instruction." *Gall, supra* at 108. There was no eyewitness to the murder of Gretchen Morgan. The appellant Michael Morgan did not testify. Assuming that Michael Morgan was the guilty party, as two juries found him to be, there was no evidence to suggest that he was acting under the influence of extreme emotional disturbance, or that there were any circumstances existing at the time of the killing to provoke or stimulate such a disturbance. The victim was stabbed twenty-four times in the back. There was no evidence of any defensive wounds or struggle. This Court has said, "In those cases considered by this court involving the necessity of an extreme emotional disturbance instruction, we have uniformly required some definitive, nonspeculative evidence." *Henley v. Commonwealth*, Ky., 621 S.W.2d 906, 909 (1981). In this case, since appellant did not testify, any inference of extreme emotional disturbance would be speculative at best. Furthermore, this Court has relied on the defendant's own testimony in rejecting a claim of entitlement

of lesser-included offenses, including first-degree manslaughter based on extreme emotional disturbance. *Smith v. Commonwealth*, Ky., 737 S.W.2d 683 at 686 (1987). As this Court noted in *Foster v. Commonwealth*, Ky., 827 S.W.2d 670 at 678 (1992), "We have explained in prior opinions that the event which triggers the explosion of violence on the part of the criminal defendant must be sudden and uninterrupted." As this Court noted in *Wellman v. Commonwealth*, Ky., 694 S.W.2d 696 at 697 (1985):

> There was no evidence that at the *time of the act* of homicide, there was some event, some act, some words, or the like to arouse extreme emotional disturbance, which is absolutely necessary.

The *Wellman* opinion further suggests at pages 697–698 that an extreme emotional disturbance instruction is justified "when there is probative, tangible and independent evidence on initiating circumstances, such as provocation at the time of [the defendant's] act which is contended to arouse extreme emotional disturbance."

■ The appellant's second claim of error centers upon the trial court's admission of certain financial records of the Morgans. The appellant says that the records were irrelevant; however, the Commonwealth counters that they were introduced in an attempt to show a motive for Morgan to kill his wife. On this basis, the prosecution sought to show that Gretchen had a life insurance policy insuring her life through her employment. When the prosecution failed to show, however, that the appellant had knowledge of such a policy, the trial court correctly ruled that evidence thereof would be inadmissible. Other financial records, including evidence that Morgan had bought gifts for Lisa Hood, were relevant as tending to show motive. We see no prejudicial error.

■ Finally, the appellant complains of the prosecutor's replay during his closing argument of a portion of a tape recording of the appellant's 9–1–1 call to the police. The prosecutor said that he was not sure what the recorded voice says, but that he thought it said, "What have I done?" while the police had Morgan's call "on hold." He further invited the jury to take the tape and recorder to the jury room with them and to play it over and judge for themselves what it said. First of all, we note that it is conceded by the defense that there was no objection to this procedure at trial. Furthermore, the prosecutor and the defense counsel are allowed to argue to the jury their interpretations of the evidence; this is the purpose of closing arguments. The prosecutor was also very candid with the jury in admitting that he wasn't sure that his interpretation of the tape was correct, and that they should decide the matter for themselves. There was no palpable error affecting the substantial rights of the appellant.

For all the above reasons, the intentional murder verdict and the judgment of life imprisonment of the Jefferson Circuit Court are affirmed.

STEPHENS, C.J., and REYNOLDS and WINTERSHEIMER, JJ., concur.

LAMBERT and LEIBSON, JJ., concur in result only.

STUMBO, J., dissents by separate opinion.

STUMBO, Justice, dissenting.

Respectfully, I dissent. Appellant correctly argues that there was sufficient evidence to support an instruction on first-degree manslaughter based on extreme emotional disturbance. The combination of Appellant's statement and the disarray of the Morgan home, when considered with the testimony of the psychologist who examined Appellant, was evidence from which the jury could reasonably have inferred that Appellant was guilty of a lesser crime than murder.