Bernard WHITAKER, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

No. 93–SC–822–MR.

Supreme Court of Kentucky.

Feb. 16, 1995.

Rehearing Denied May 11, 1995.

G. Thomas Mercer, Appellate Public Advocate of counsel, Louisville, for appellant.

Chris Gorman, Atty. Gen., Michael L. Harned, Lana Grandon, Asst. Attys. Gen., Crim. Appellate Div., Frankfort, for appellee.

STUMBO, Justice.

Bernard Whitaker appeals from his murder conviction which resulted in a sentence of life imprisonment. On appeal, he raises four errors, two of which we find sufficient to merit reversal of this conviction.

Whitaker was charged with the murder of his estranged wife. The evidence presented was that he came to her place of employment, asked her to sign some tax documents, and then shot her in the head at close range. At trial he claimed not to recall the actual shooting and sought, but did not receive, instructions on extreme emotional disturbance and the lesser included offense of first-degree manslaughter. Additionally, he argues as error the admission into evidence of a photograph taken of the victim's head showing the wound caused by the shooting. Whitaker alleged that the shaving of his wife's head constituted an alteration of the evidence and thus rendered the photograph inadmissible.

As to the denied instructions, we find there was no error in the trial court. As we stated in *Morgan v. Commonwealth*, Ky., 878 S.W.2d 18 (1994), "[t]here was no evidence to suggest that he was acting under the influence of extreme emotional disturbance, or that there were any circumstances existing at the time of the killing to provoke or stimulate such a disturbance." *Id.* at 20. Evidence of extreme emotional disturbance must be definite and nonspeculative. *Henley v. Commonwealth*, Ky., 621 S.W.2d 906, 909 (1981). There must be an event triggering the explosion of violence on the part of the defendant. *Foster v. Commonwealth*, Ky., 827 S.W.2d 670, 678 (1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 337, 121 L.Ed.2d 254 (1992). Thus, we find no error in the failure to give the requested instructions.

While the complained of photograph was certainly unpleasant to look at, we do not find it to be overly inflammatory so as to arouse the passions of the jury. Indeed, the photograph had relevant evidentiary value because it assisted the Commonwealth in proving that the gunshot which killed the victim was a contact wound. This was important since the evidence established that Whitaker was the only person standing near the victim when she was shot. Though there were witnesses, none actually saw the gun at the time of the shooting. Thus, we hold that while the photograph was perhaps gruesome, it was both relevant and probative evidence and was not improperly admitted. *Geary v. Commonwealth*, Ky., 503 S.W.2d 505 (1972); *Gall v. Commonwealth*, Ky., 607 S.W.2d 97 (1980), *cert. denied,* 450 U.S. 989, 101 S.Ct. 1529, 67 L.Ed.2d 824 (1981).

The next issue presented by Whitaker is more troubling. Whitaker was initially represented by a member of the public defender's office, Carolyn Keeley. Approximately two and one-half months later, Keeley resigned from the public defender's office and took a position in the office of the Commonwealth's Attorney. Prior to the beginning of the trial, the following exchange took place:

MR. EATON: JUDGE, AT THIS TIME MY CLIENT WISHES TO MAKE AS A POINT OF RECORD HIS OBJECTION TO THE OFFICE OF TOM OSBORNE PROSECUTING THIS CASE, SINCE CAROLYN KEELEY IS NOW EMPLOYED IN THAT OFFICE AND CAROLYN KEELEY ONCE REPRESENTED HIM.

THE COURT: YOU'VE MADE YOUR MOTION OF RECORD AND THE MOTION'S DENIED, AND YOU'VE PROTECTED THE RECORD FOR YOUR CLIENT.

MR. OSBORNE: YOUR HONOR, I WOULD LIKE TO ADD FOR THE RECORD THAT I WAS AWARE MRS. KEELEY HAD REPRESENTED HIM FROM THE PLEADINGS IN THE FILE. MRS. KEELEY NOR I HAVE DISCUSSED THIS MATTER DIRECTLY OR INDIRECTLY, AND SHE HAS PERFORMED NO WORK AND TAKEN NO PART IN THE PROSECUTION. SHE MAY NOT KNOW IT'S EVEN BEING TRIED TODAY. I CERTAINLY HAVEN'T TOLD HER.

THE COURT: THAT MAY BE AN OVERSTATEMENT, MR. OSBORNE, AND IT MAY BE CORRECT, SIR.

MR. OSBORNE: I'M SAYING I DON'T KNOW IF SHE KNOWS IT'S GOING ON. I KNOW SHE'S NOT PARTICIPATED IN THE TRIAL.

THE COURT: I ACCEPT THE ACCURACY OF YOUR STATEMENT AND THE INTEGRITY OF YOUR OFFICE, SIR. PLEASE GIVE AN OPENING STATEMENT.

MR. OSBORNE: OKAY.

The Commonwealth contends that the trial court's action was proper and should not be overturned on appeal, citing *Summit v. Mudd*, Ky., 679 S.W.2d 225 (1984). In *Summit*, a Jefferson County Public Defender was appointed to represent the defendant. At some point during the course of the prosecution, the lawyer moved to the office of the Jefferson County Commonwealth's Attorney, the prosecutors in the case. The Office of the Public Defender moved to disqualify the entire office of the Commonwealth's Attorney

on ethical grounds. The trial court denied the motion. On appeal, this Court directed a remand, ordering the trial court to hold a hearing:

> [T]o determine if there has been any actual prejudice as a result of a breach of the attorney/client confidentiality. In the circumstances of this case actual prejudice must be shown before the Commonwealth Attorney's entire staff is disqualified. The mere possibility of the appearance of impropriety is not sufficient to disqualify the entire staff of the Commonwealth Attorney's office from further prosecution of the case.

*Id.* at 225, 226.

In *Summit*, the focus of the hearing was to be "the ethics of the attorneys involved which must protect any client from a prejudice to his right by a breach of confidentiality." *Id.* at 226. Therein, we stated that we would not assume that counsel who changes his or her employment would violate the strong ethical considerations of attorney/client confidentiality, and that we did not believe the mere possibility of the appearance of impropriety was sufficient ground to disqualify the entire staff of a prosecutor. Thus, we merely remanded for an evidentiary hearing on the issue.

■ Having considered this matter at length, we have decided that a remand is the appropriate step to take on this issue, but we believe the focus of the evidentiary hearing must be slightly different than as was set forth in *Summit v. Mudd*. We begin our consideration with Supreme Court Rule 3.130 (Kentucky Rules of Professional Conduct, Rule 1.11), which is applicable to successive government and private employment:

(c) Except as law may otherwise expressly permit, a lawyer serving as a public officer or employee shall not:

(1) Participate in a matter which the lawyer participated personally and substantially while in private practice or nongovernmental employment, unless under applicable law no one is, or by lawful delegation may be, authorized to act in the lawyer'[s] stead in the matter....

It is clear from the language of this rule that it is the relationship between the lawyer and client that must be the focus of the conflict examination. The trial court must examine the depth to which the attorney/client relationship was established. An appointed counsel whose contact with his client has been brief and perfunctory without an exchange of confidential information in the form of planning trial strategy, or discussions of potential witnesses to be called on the defendant's behalf, or avenues of investigation to be undertaken by defense counsel would not be considered to have had personal and substantial participation.

> An attorney may not be permitted to participate in the prosecution of a criminal case if by reason of his professional relations with [the] accused he has acquired a knowledge of the facts ... which are closely interwoven therewith ... nor should he be allowed to prosecute if he has been previously employed by defendant in relation to the same transaction.

27 C.J.S., District and Prosecuting Attorneys, § 12(6)(c) (1959 and Supp.1993). Thus, we hold that if Keeley participated personally and substantially in the preparation of a defense of Whitaker, she would certainly be disqualified from the prosecution of Whitaker.

We are mindful that the commentary to SCR 3.130 (Rule 1.11) specifically states that: "Paragraph (c) does not disqualify other lawyers in the agency with which the lawyer in question has become associated." *Kentucky Rules of Professional Conduct* Rule 1.11 cmt. [9] (1989). However, commentary provides merely a guide to interpretation of the rules as set forth, but does not have the force of law. *Cf.*, KRE 1104; KRS 500.100. Given that the case at bar involves the very delicate and important issue of client confidentiality in the context of a criminal trial, we believe that the Sixth Amendment to the United States Constitution requires a careful inquiry by the trial court and disqualification of the entire office of the Commonwealth's Attorney if the attorney has engaged in a substantial and personal participation in the defendant's case, for to do otherwise would be to ignore the potentially chilling effect of any future attorney/client relationships.

We do not believe that there must be a showing of prejudice by the defendant in a case such as this in order to bar the Commonwealth's Attorney from prosecuting this matter. As noted in *State v. Allen*, 539 So.2d 1232 (La.1989):

> [T]he former client need show no more than the matters embraced within the pending suit wherein the former attorney appears on behalf of his adversary are substantially related to the matters or cause of action [where] the attorney previously represented him, the former client. The Court will assume that during the course of the former representation confidences were disclosed to the attorney bearing on the subject matter of the representation.

*Id.* at 1234. The standard we adopt today is slightly different from that discussed in *Allen*, because our focus is on the degree of the relationship established between attorney and client during the course of the representation.

Had the foregoing issue been the only grounds for concern on this appeal, we would have simply remanded for a hearing by the trial court on the issue of conflict. However, having carefully reviewed the opening and closing arguments of the Commonwealth during the penalty phase, we find that we must reverse and remand for a new trial. Whether that will be simply a new trial on penalty phase or an entirely new trial on both guilt and penalty will depend on the findings of the trial court as to the conflict of interest which may exist in the office of the Commonwealth's Attorney.

■ During the penalty phase opening statement, the Commonwealth stated, *inter alia*, the following:

> YOU'LL LEARN THAT THE PAROLE AND PROBATION GUIDELINES ARE 50 PERCENT OF THE TIME. IN OTHER WORDS, IF YOU SET THE 20 YEAR SENTENCE, THE MINIMUM PAROLE ELIGIBILITY IS 10 YEARS. IF YOU ASSESS ALL THE WAY UP FROM 100 TO 1000 YEARS UP TO

LIFE, IT'S 12 YEARS. SO, NO MATTER WHAT YOU DO, YOU CANNOT SET A SIGNIFICANT PUNISHMENT IN A SIMPLE MURDER CASE UNDER KENTUCKY LAW.

....

[T]HAT SEEMS TO BE FAIR IN TERMS OF COMMON SENSE. THE LAW TIES YOUR HANDS. THE LAW WILL NOT LET YOU SET A PENALTY GREATER THAN 12 YEARS WITHOUT ... UNTIL THE PERSON REACHES THE MINIMUM ELIGIBILITY FOR PAROLE.

In the penalty phase closing argument, the Commonwealth concluded with the following:

AS I MENTIONED IN OPENING STATEMENT, THERE ARE SOME PEOPLE WHO TRULY BELIEVE THAT JUSTICE IN OUR SOCIETY WOULD MEAN MORE THAN IF YOU EXECUTE A PERSON IN COLD BLOOD IN A PUBLIC PLACE, TAKE THEIR LIFE AWAY FOR NO REASON, THAT YOU WOULD RECEIVE MORE THAN A MERE 12-YEAR SLAP ON THE HAND. AND THAT'S WHAT I THINK A LIFE SENTENCE IS—IT'S A SLAP ON THE HAND.

WE DON'T KNOW BUT ONE THING ABOUT BERNARD WHITAKER. WE KNOW HE'S CAPABLE OF PLANNING AND EXECUTING THE MURDER OF ANOTHER INDIVIDUAL. THAT'S ALL WE KNOW FOR SURE. AND WE CAN'T KEEP HIM OUT OF OUR COMMUNITY. THE LAW TIES OUR HANDS TO KEEP US FROM DOING IT. WE CAN KEEP HIM OUT FOR 12 YEARS. THAT'S THE MAXIMUM.

....

IF WE COULD GIVE A LARGER SENTENCE, I COULD CONSIDER IT. BUT WE CAN'T. TWELVE YEARS IS ALL WE CAN DO, AND IT'S FAIR AND IT'S APPROPRIATE, AND IT'S REALLY NOT EVEN ENOUGH TO PROTECT THE REST OF THE PEOPLE IN OUR COMMUNITY. BUT THAT'S WHAT WE SHOULD DO.

The Commonwealth's Attorney correctly pointed out in his opening statement that the twelve years he was referring to was the minimum parole eligibility. His closing statement, however, could easily be interpreted as stating that Whitaker would be released at the end of twelve years. We find this to be particularly prejudicial to Whitaker since the only information the jury received as to parole eligibility was an oral stipulation by counsel as to parole eligibility. In *Sanders v. Commonwealth*, Ky., 844 S.W.2d 391 (1992), we recognized that subsection (2) of KRS 439.3401 placed a twelve-year cap or ceiling on parole eligibility. Under KRS 532.055, the so-called truth in sentencing law, parole eligibility and guidelines are admissible evidence. However, as we stated in *Commonwealth v. Reneer*, Ky., 734 S.W.2d 794 (1987), we will "consider any abuses or injustices alleged to be caused by K.R.S. 532.055 when presented by a proper case." *Id.* at 798. This is just such a case. Taking the Commonwealth's statement on closing at face value, it would be clearly reasonable for the jury to assume that at the end of twelve years' imprisonment, Whitaker would be released. It would also be reasonable for the jury to assume that by imposing the life sentence that was given, the jury was in effect sentencing him to twelve years in prison.

Appellant would have us assume that the Commonwealth intended to deceive or mislead the jury. We do not go that far. We recognize that in the heat of battle, misstatements are sometimes made. However, even unintentional misstatements can produce reversible error.

Thus, we reverse and remand for further proceedings in the trial court. The trial court should first hold an evidentiary hearing to determine whether the prior representation of Whitaker by Keeley was personal and substantial resulting in the communication of privileged information as heretofore described. If as a result of that hearing the trial court finds that the office of the Commonwealth's Attorney should have been disqualified from prosecution in this case, Appellant shall receive a new trial in both penalty and guilt phases. Should the trial court

determine that the Commonwealth's Attorney could proceed in this prosecution, then a new penalty phase shall be conducted and Appellant resentenced in accordance with the results of the jury verdict.

STEPHENS, C.J., LAMBERT and LEIBSON, JJ., concur.

WINTERSHEIMER, J., dissents by separate opinion in which REYNOLDS and SPAIN, JJ., join.

WINTERSHEIMER, Justice, dissenting.

I must respectfully dissent from the conclusions of the majority opinion in regard to the question of disqualification of the office of the Commonwealth's Attorney. The opinion is not a modification of *Summit v. Mudd*, Ky., 679 S.W.2d 225 (1984), because it establishes an entirely new standard in such situations. The opinion states that the focus of an evidentiary hearing is different from that set forth in *Mudd, supra,* and that the rule is that the relationship between lawyer and client must be examined for conflicts by the trial court.

*Mudd* has been the settled law since 1984 as a result of a unanimous opinion. The standard has been that actual prejudice must be shown before disqualification is required. There is nothing in this record that indicates that the assistant prosecutor communicated any confidential information about this client to the prosecuting attorney. *Mudd* stated:

"The mere possibility of the appearance of impropriety is not sufficient to disqualify the entire staff of the Commonwealth Attorney's office.... It is wrong to automatically assume that a lawyer who represents a client as a public defender will violate the very strong ethical considerations of attorney/client confidentiality." pp. 225–26.

In this case the most that Whitaker is able to allege on appeal is the appearance of impropriety. The question could be raised as to whether the prosecution must insure that even the appearance of impropriety does not result.

My review of the record indicates that the Commonwealth's Attorney stated that the assistant and he had not discussed this matter directly or indirectly and she had performed no work or taken no part in the prosecution. I do not see how a further evidentiary hearing could expand on this statement unless we are to assume that the Commonwealth's Attorney was not stating the truth. The trial judge accepted this answer.

The opinion makes reference to SCR 3.130, Kentucky Rules of Professional Conduct Rule 1.11, which speaks of successive government and private employment. However, this case does not involve successive government and private employment. Rather, the situation here is successive governmental employment because the public defender's office, in some cases, is a full-time assignment, and in any event, it is supported by government funds.

The extension of such a standard could have a chilling effect on many young lawyers in the criminal law area because it would paralyze professional development and inhibit movement from the defense to the prosecution side or vice versa.

In regard to the penalty phase analysis, I believe the last sentence is somewhat incomplete because unintentional misstatements can produce reversible error, but such error may be nonprejudicial in the light of circumstances or overwhelming evidence. *See* RCr 9.24 and *Abernathy v. Commonwealth*, Ky., 439 S.W.2d 949 (1969).

The extension required by the majority opinion is not necessary because in the absence of prejudice the attorney-client relationship is irrelevant. The majority opinion is not a useful modification, it only muddles *Mudd.*

REYNOLDS and SPAIN, JJ., join in this dissent.