Delania FIELDS, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

No. 1999–SC–1026–MR.

Supreme Court of Kentucky.

Jan. 25, 2001.

Rehearing Denied May 24, 2001.

Ned Barry Pillersdorf, Pillersdorf, Derossett & Barrett, Prestonsburg, Counsel for Appellant.

A.B. Chandler, III, Attorney General, Anitria M. Franklin, Assistant Attorney General, Office of Attorney General, Criminal Appellate Division, Frankfort, Counsel for Appellee.

COOPER, Justice.

Appellant Delania Fields was indicted by a Letcher County Grand Jury for the murder of her newborn child. She was convicted of manslaughter in the first degree and sentenced to twenty years in prison. She appeals to this court as a matter of right, Ky. Const. § 110(2)(b), asserting three claims of error, *viz:* (1) there was insufficient evidence of extreme emotional disturbance to warrant an instruction on first-degree manslaughter; (2) the Commonwealth was permitted to introduce irrelevant and inflammatory evidence; and (3) a prospective juror should have been excused for cause.

From February 1997 until the end of October 1997, Appellant engaged in a secret extramarital sexual relationship with Roger Baker. Although she continued to live with her husband, Appellant had no sexual intercourse with him during this period. In December 1997 or January 1998, Appellant discovered that she had become pregnant by Baker and determined that the date of conception was October 27, 1997. She informed Baker of the fact, but kept it a secret from her husband, her family and her friends. Appellant testified at trial that she entered into a state of denial regarding the pregnancy, *i.e.*, if she did not acknowledge the pregnancy, it would cease to exist. There was substantial lay testimony that from January to July 1998, Appellant underwent a personality change and appeared to be severely depressed. Eventually, Appellant admitted to her family and friends that she was pregnant, but claimed the pregnancy resulted from intercourse with her husband approximately twelve weeks after the date of actual conception.

At 11:00 p.m. on July 25, 1998, Appellant began to experience severe vaginal bleeding. At approximately 3:00 a.m. on July 26, she delivered a full term baby girl on the kitchen floor of her residence. She wrapped the infant in a towel and placed it in a garbage bag, which she then placed in the kitchen closet. She tried to clean the blood from the kitchen floor but ultimately lost consciousness. Later that morning, Appellant's husband found her lying on the kitchen floor and took her to the hospital. Although Appellant denied having given birth, a gynecological examination revealed the presence of an umbilical cord and a placenta but no fetus. During a subsequent search of Appellant's residence, the infant was found dead inside the garbage bag in the kitchen closet. An autopsy revealed that the baby had breathed before dying and that the most likely cause of death was asphyxiation.

## I. EXTREME EMOTIONAL DISTURBANCE.

A person is guilty of murder under KRS 507.020(1)(a) if he/she intentionally causes the death of another, "except that in any prosecution a person shall not be guilty under this subsection if he acted under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be." A person is guilty of manslaughter in the first degree under KRS 507.030(1)(b) if he/she

intentionally causes the death of another "under circumstances which do not constitute murder because he acts under the influence of extreme emotional disturbance, as defined in subsection (1)(a) of KRS 507.020."

Appellant asserts there was no proof that she was under the influence of extreme emotional disturbance (EED) when she killed her child; thus, there was no evidentiary basis for her conviction of first-degree manslaughter. *Commonwealth v. DeHaven,* Ky., 929 S.W.2d 187 (1996). She claims that the evidence at trial proved only that she killed her child while in a "dissociative trance," which is a mental illness or disorder. We agree that mental illness, standing alone, does not constitute EED. *See Cecil v. Commonwealth,* Ky., 888 S.W.2d 669 (1994); *Bowling v. Commonwealth,* Ky., 873 S.W.2d 175 (1993), *cert. denied,* 513 U.S. 862, 115 S.Ct. 176, 130 L.Ed.2d 112 (1994); *Stanford v. Commonwealth,* Ky., 793 S.W.2d 112 (1990); *Wellman v. Commonwealth,* Ky., 694 S.W.2d 696 (1985); *Gall v. Commonwealth,* Ky., 607 S.W.2d 97 (1980), *cert. denied,* 450 U.S. 989, 101 S.Ct. 1529, 67 L.Ed.2d 824 (1981), *overruled on other grounds, Payne v. Commonwealth,* Ky., 623 S.W.2d 867 (1981). However, that does not mean that evidence of mental illness *precludes* a finding of EED.

At trial, two psychologists, Dr. John Ludgate and Dr. Harwell Smith, testified that when Appellant killed her child she was suffering from dissociative disorder, a mental impairment characterized by a detached, emotionless, almost robotic state of mind; and that, as a result, Appellant lacked substantial capacity to appreciate the criminality of her conduct or to conform her conduct to the requirements of law. Neither psychologist had seen or treated Appellant prior to July 26, 1998. Dr. Ludgate began treating her for major depression and anxiety disorder on August 8, 1998, twelve days after the birth and death of her child. It was not until September 17, 1998, that he concluded that Appellant had developed dissociative disorder on the morning of July 26. Dr. Ludgate testified that dissociative disorder is a rare condition which usually occurs only in times of extreme trauma, and that the dissociation occurred when Appellant realized she was actually going to give birth. Dr. Smith saw Appellant in January 1999 for the purpose of evaluation. In addition to his own examination, he reviewed Dr. Ludgate's records and agreed that Appellant was suffering from dissociative disorder when she killed her child.

Appellant claimed at trial that she could not recall the events of July 26, 1998. However, the jury heard an audiotape of a lengthy statement she gave on that date to Kentucky State Police Detective Avery Shrum, who was interviewing her in an attempt to locate the missing baby. During that interview, Appellant described in detail and in an apparently normal and lucid tone of voice the events leading up to and including the birth and death of her child and the disposition of the body.

Pursuant to the testimonies of Drs. Ludgate and Smith, the jury was instructed on the defense of insanity. Over Appellant's objection, the jury was also instructed on first-degree manslaughter under KRS 507.030(1)(b), *i.e.,* intentional homicide committed while under the influence of EED. The jury rejected the insanity defense, as they were entitled to do under the totality of the evidence presented in this case. KRS 500.070(3); *Port v. Commonwealth,* Ky., 906 S.W.2d 327 (1995). However, the jury did not convict Appellant of murder, but of first-degree manslaughter.

The language in KRS 507.020(1)(a) that describes EED was borrowed from Sec-

tion 210.3(1)(b) of the Model Penal Code. KRS 507.030 (1974 Commentary). The statutory description first adopts the common-law concept of "provocation," *i.e.*, the requirement of an initiating event, though the provocation need not have been perpetrated by the victim of the homicide. *Model Penal Code and Commentaries*, Pt. II, § 210.3, Comment 5, at 60–61 (A.L.I. 1980) (hereinafter *Commentaries*). The additional requirement that there be "a reasonable explanation or excuse" is a derivative of the common-law requirement that the provocation be "adequate." R. Lawson and W. Fortune, *Kentucky Criminal Law* § 8–3(b)(3), at 342 (LEXIS 1998). Reasonableness is ordinarily an objective evaluation; and the common-law concept of "sudden heat of passion" was premised solely upon an objective evaluation of the adequacy of the provocation. *McHargue v. Commonwealth*, 231 Ky. 82, 21 S.W.2d 115, 117–18 (1929). However, the description of EED in KRS 507.020(1)(a) recites a subjective test in that the reasonableness of the explanation or excuse is determined from the viewpoint of "a person in the defendant's situation under the circumstances *as the defendant believed them to be.*" (Emphasis added.) By this language, the drafters of the Model Code anticipated that EED could be premised upon a reasonable, but mistaken, belief. *Commentaries, supra*, at 61–62.

The drafters of the Model Code rejected the notion that murder could be reduced to first-degree manslaughter solely on the basis of "diminished responsibility" (mental abnormality), a fact relevant to either proving the defense of insanity or disproving the "extreme indifference to human life" element of the offense of, *e.g.*, wanton murder under KRS 507.020(1)(b). However, the drafters did contemplate that evidence of diminished responsibility would be considered in evaluating the defendant's situation under the circumstances as he/ she believed them to be. *Commentaries, supra*, at 72.

Our early cases did not interpret EED as had the drafters of the Model Code, but instead held that EED could be proven solely by evidence of diminished responsibility, *e.g.*, mental disorder. *Edmonds v. Commonwealth*, Ky., 586 S.W.2d 24 (1979), *overruled on other grounds, Wellman v. Commonwealth, supra; Ratliff v. Commonwealth*, Ky., 567 S.W.2d 307 (1978), *overruled by Wellman v. Commonwealth, supra*, and *McClellan v. Commonwealth, infra*. In *Gall v. Commonwealth, supra*, at 109, and *Wellman v. Commonwealth, supra*, at 697–98, we retreated from that position and held that while mental illness was relevant in measuring the reasonableness of a defendant's reaction to provocation, it, standing alone, did not constitute EED. In *McClellan v. Commonwealth*, Ky., 715 S.W.2d 464 (1986), *cert. denied*, 479 U.S. 1057, 107 S.Ct. 935, 93 L.Ed.2d 986 (1987), we adopted, *sub silentio*, the interpretation propounded by the drafters of the Model Code.

> [A]n underlying mental disease may be considered by a jury in making its determination of whether a defendant's explanation or excuse for his alleged "extreme emotional disturbance" is reasonable under the circumstances as he believed them to be, but standing alone, evidence which tends to establish insanity or mental illness is not sufficient to establish extreme emotional disturbance.

*Id.* at 468. The *McClellan* Court then fashioned a definition of EED which, pursuant to *Holbrook v. Commonwealth*, Ky., 813 S.W.2d 811, 815–16 (1991), *overruled on other grounds, Elliott v. Commonwealth*, Ky., 976 S.W.2d 416 (1998), now accompanies every instruction on first-degree manslaughter premised upon KRS 507.030(1)(b), *viz:*

Extreme emotional disturbance is a temporary state of mind so enraged, inflamed, or disturbed as to overcome one's judgment, and to cause one to act uncontrollably from the impelling force of the extreme emotional disturbance rather than from evil or malicious purposes. It is not a mental disease in itself, and an enraged, inflamed, or disturbed emotional state does not constitute an extreme emotional disturbance unless there is a reasonable explanation or excuse therefor, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under circumstances as [the] defendant believed them to be.

715 S.W.2d at 468–69.

In summary, the mere presence of mental illness, standing alone, does not constitute EED. It is the presence of adequate provocation, not the absence of mental illness, which is essential to a finding of EED. Conversely, the presence of mental illness does not preclude a finding of EED. In fact, such is entirely relevant to a subjective evaluation of the reasonableness of the defendant's response to the provocation.

█ We sometimes refer to the provocation requirement as the "triggering" event. *Foster v. Commonwealth*, Ky., 827 S.W.2d 670, 678 (1991), *cert. denied*, 506 U.S. 921, 113 S.Ct. 337, 121 L.Ed.2d 254 (1992); *see also Baze v. Commonwealth*, Ky., 965 S.W.2d 817, 823 (1997), *cert. denied*, 523 U.S. 1083, 118 S.Ct. 1536, 140 L.Ed.2d 685 (1998); *Whitaker v. Commonwealth*, Ky., 895 S.W.2d 953, 954 (1995); *Cecil v. Commonwealth*, *supra*, at 673. In fact, Professors Lawson and Fortune posit that the concept of "adequate provocation" is broad enough to include "the cumulative impact of a series of related events." Lawson and Fortune, *supra*, § 8–3(b)(3), at 342 (citing *California v. Wharton*, 53 Cal.3d 522, 280 Cal.Rptr. 631, 809 P.2d 290 (1991) and *Pennsylvania v. Whitfield*, 475 Pa. 297, 380 A.2d 362 (1977)). The requirement that the provocation be "adequate" also includes the requirement that it be "uninterrupted."

Because one's emotional response to a situation may dissipate over time, a subsidiary inquiry arises as to whether there intervened between the provocation and the resulting homicide a cooling-off period of sufficient duration that the provocation should no longer be regarded as "adequate."

*Commentaries, supra*, at 55. *See Springer v. Commonwealth*, Ky., 998 S.W.2d 439, 452 (1999); *Morgan v. Commonwealth*, Ky., 878 S.W.2d 18, 21 (1994); *Foster v. Commonwealth*, *supra*, at 678. It is not required, however, that the homicide occur concurrently with the provocation, or even shortly thereafter, so long as the provocation remains uninterrupted until the killing. *Spears v. Commonwealth*, Ky., 30 S.W.3d 152, 155 (2000); *Springer v. Commonwealth*, *supra*, at 452; *McClellan v. Commonwealth*, *supra*, at 468.

Here, there were two theories under which the jury could have reasonably concluded that Appellant was acting under the influence of EED when she killed her newborn infant. First, there was substantial evidence from lay witnesses, including Appellant, herself, that the discovery of her out-of-wedlock pregnancy triggered an EED that remained uninterrupted until she killed her child. Alternatively, in view of the evidence of Appellant's admitted state of denial with respect to her pregnancy, the jury could have reasonably concluded that the birth, itself, was so shocking to her as to constitute adequate provocation which triggered an EED. Either way, the evidence was sufficient to support her conviction of first-degree

manslaughter. *Commonwealth v. Benham*, Ky., 816 S.W.2d 186 (1991).

## II.  THE INFANT CAR SEAT.

■ Appellant asserts it was error to admit into evidence Commonwealth's exhibit 38, an infant car seat. One of Appellant's theories at trial was that Roger Baker, the child's biological father, maliciously stalked her during her pregnancy and thereby contributed to the temporary insanity that overcame her, causing her to kill her child. Baker denied stalking Appellant, but admitted that he stayed in contact with her out of concern for the welfare of his unborn child. To prove the sincerity of this claim, he testified that on July 6, 1998, he spent $517.50 at a Pikeville department store to purchase clothing, diapers, and an infant car seat in anticipation of the child's birth. The car seat was introduced into evidence to verify this testimony. On appeal, Appellant asserts that the probative value of the car seat was substantially outweighed by its prejudicial effect, KRE 403, primarily because of the alleged prominent display on the car seat of a photograph of a smiling infant.

Exhibit 38 is an "evenflo" brand infant car seat. There are no photographs displayed on the car seat, itself. Attached by a plastic tie to the front of the car seat are four items, a 5″ × 5″ recall list card, a 5½″ × 5″ warranty card, a 5 ½″ × 8½″ instruction sheet, and a 6½″ × 8″ advertisement describing the features of the product. These items do not contain a photograph of an infant. In the car seat's box container, but not attached to the car seat and not marked as a separate exhibit, is a 4″ × 7″ twelve-page pamphlet describing other "evenflo" products available for purchase from the manufacturer. On the front of this pamphlet is a picture of a woman holding an infant in her arms. The size of the picture of the infant is 2″ × 2″. The car seat was removed from the box container before being marked as evidence. The remaining contents of the box, if any, were not exhibited to the jury. If the unattached pamphlet was allowed to remain on the car seat during trial, that fact is not apparent from examining the display of the exhibit on the trial videotape; and, if so, Appellant did not object to it on that basis at trial. *Ruppee v. Commonwealth*, Ky., 821 S.W.2d 484 (1991); *Kennedy v. Commonwealth*, Ky., 544 S.W.2d 219, 222 (1976).

The only expressed objection to exhibit 38 was that it was irrelevant. Its relevance was that it tended to disprove Appellant's claim that Baker "stalked" her during her pregnancy, from which it could be inferred that he did not drive her insane, from which it could be inferred that she was not insane when she killed her child. While this is admittedly a close call, we do not find that the trial judge abused his discretion in admitting exhibit 38 into evidence. *Cf. Commonwealth v. English*, Ky., 993 S.W.2d 941, 945 (1999). If the 4″ × 7″ pamphlet containing the 2″ × 2″ photograph of an infant was on the car seat during trial, it was not "prominently displayed" and no mention was made of it or attention called to it.

## III.  FAILURE TO EXCUSE
## JUROR FOR CAUSE.

■ Appellant claims it was error not to excuse Juror No. 28 for cause. Appellant used a peremptory strike to remove No. 28 from the panel. *Thomas v. Commonwealth*, Ky., 864 S.W.2d 252, 259 (1993), *cert. denied*, 510 U.S. 1177, 114 S.Ct. 1218, 127 L.Ed.2d 564 (1994).

Juror No. 28 stated during voir dire that he had heard a lot of "rumors and gossip" about the case and that he might be "affected" by what he had heard. But when questioned as to the nature of the rumors

and gossip, he replied that he had heard that Appellant had killed her baby and thrown it away in a garbage bag. Of course, those facts were essentially admitted by Appellant and uncontested at trial. Juror No. 28 added, without prompting, that he would not decide a case on the basis of rumors and gossip; and that he had "been on enough cases before—I know when you hear the evidence, it is never the same as what you heard before." He also advised that he had an open mind with respect to Appellant's insanity defense. This juror was questioned only by defense counsel. Neither the prosecutor nor the judge asked him any questions, much less the rehabilitating "magic question" condemned in *Montgomery v. Commonwealth*, Ky., 819 S.W.2d 713 (1991).

The only basis for Appellant's claim of reversible error is Juror No. 28's statement that he might be "affected" by the information which he heard through rumors and gossip. However, No. 28 was an experienced juror who knew the difference between evidence and "rumors and gossip," and who advised without being prompted that he would not decide a case on the basis of the latter. The only pretrial information that he had acquired was evidence that was uncontested at trial. On the other hand, he stated that he had an open mind about Appellant's insanity defense, which was the principal contested issue at trial. Considering the totality of his answers to defense counsel's voir dire, we conclude that the trial judge did not abuse his discretion by not excusing Juror No. 28 for cause. *Williams v. Commonwealth*, Ky.App., 829 S.W.2d 942 (1992) (juror who stated his belief that one who admitted killing was guilty of murder rehabilitated himself by his subsequent statement that he would excuse the killing if he believed the defendant acted in self-defense).

Accordingly, the judgment of conviction and sentence imposed by the Letcher Circuit Court are affirmed.

All concur.

STUMBO, J., not sitting.