NOTICE:  This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press.  Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us.  Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Hillsborough-northern judicial district
No. 2008-945


THE STATE OF NEW HAMPSHIRE

v.

MICHAEL ADDISON
(MOTION TO DISQUALIFY ATTORNEY GENERAL'S OFFICE)

Argued:  January 9, 2014
Opinion Issued:  March 7, 2014

Joseph A. Foster, attorney general (Richard W. Head, associate attorney general, on the motion and orally), for the State.

Getman, Schulthess & Steere, P.A., of Manchester (Andrew R. Schulman on the motion), David M. Rothstein, deputy chief appellate defender, and Christopher M. Johnson, chief appellate defender, of Concord, on the motion, and Mr. Schulman orally, for the defendant.

PER CURIAM.  The defendant, Michael Addison, moves to disqualify the New Hampshire Attorney General's Office from further participation in this case "from this point forward in connection with any aspect of his case on direct appeal, on remand or on collateral review," and moves for the appointment of a special prosecutor.  We deny the motion.

The record establishes the following facts. The defendant was convicted of capital murder and sentenced to death in 2008. On December 31, 2008, we docketed the automatic appeal required under RSA 630:5, X (2007), and in May 2009, the defendant filed his notice of appeal pursuant to Supreme Court Rule 7.

In August 2009, Attorney Lisa Wolford, who had been employed by the New Hampshire Public Defender for approximately seven years, began working with the New Hampshire Appellate Defender on a two-year rotation. When Wolford began her rotation, the appellate defender office was preparing a brief regarding the standards applicable to our mandatory review of the defendant's sentence under RSA 630:5, XI (2007). In addition to other appeals, for which she had sole responsibility and on which she spent the majority of her time, Wolford was assigned to research and draft the "aggravating factors" section of that brief, which was filed with this court in November 2009. See State v. Addison, 160 N.H. 732 (2010). After the State filed its opposing brief, Wolford was assigned to review and summarize the cases cited in a footnote.

In early 2010, Wolford was reassigned from the defendant's defense team, and in February 2012, she completed her rotation with the appellate defender and returned to work for the public defender in the Stratham office. In March 2012, she submitted her resume to the attorney general's office, requesting consideration for a position with the criminal justice bureau's appeals division. In a letter accompanying her resume, she stated that she was "interested in a position that enables me to continue to focus on appellate advocacy." Her resume noted that, in addition to other work with the appellate defender, she "[c]ontributed to . . . the defendant's brief in the capital sentencing appeal in State v. Addison, 160 N.H. 732 (2010)." Wolford was offered a position with the attorney general's office; she began employment there in early July 2012.

Approximately one month before Wolford began working at the attorney general's office, the executive director of the public defender office inquired by letter to then Attorney General Michael Delaney whether, given that Wolford had "worked on appeals in the Michael Addison capital case, and had ongoing access to confidential and privileged information and defense strategies relating to that case," he had "satisfied [himself] on the propriety of this move before extending an offer to Ms. Wolford." The attorney general, replying by letter, stated that "[a]s you are aware, there is no general bar under the Rules of Professional Conduct against a former public defender assuming a position as a prosecutor," that several former public defenders had accepted employment in the attorney general's office, and that his office would "ensure that [Wolford] is screened from any matter in which she had involvement as a public

2

defender, see N.H. R. Prof. Conduct 1.9, 1.11(d), or was exposed to confidential information, see N.H. R. Prof. Conduct 1.6, including the Addison case."

On August 27, 2012, the attorney general received a letter from outside counsel retained by the public defender "to assist . . . in reviewing Wolford's recent transfer from the Public Defender's [O]ffice to the Attorney General's [O]ffice, and any ethical issues that may arise from that transfer." The letter sought information regarding "the steps that are now being taken within [the attorney general's] office to protect confidential client information about Mr. Addison's case that [Wolford] may have learned from former colleagues at the Public Defender's Office or the Appellate Defender's [O]ffice."

The attorney general replied by letter dated October 2, 2012, stating:

> From the outset of her employment at the Attorney General's Office, Attorney Wolford was instructed that she was not to have any involvement in any case (a) on which the Appellate Defender's Office represented the defendant while she was employed in that office; (b) on which the Stratham Public Defender's Office represented the defendant while she was employed in that office; (c) involving a former client; or (d) that, for whatever reason, might present a conflict under the Rules of Professional Conduct.

The letter confirmed that, as of August 30, 2012, "Ms. Wolford was locked out of all electronic files related to State v. Addison. An audit was conducted of each of those matters back to July 6, 2012, her first day in the office, which confirmed that Ms. Wolford has not accessed any of those files." In addition, the attorney general noted, "The attorneys assigned to the Addison case have all formally acknowledged their understanding that Ms. Wolford is screened from the Addison case and cannot be involved in any conversation about the case." Regarding electronic research files Wolford brought with her from the public defender's office, the attorney general explained that "[w]hen she arrived she downloaded those files to her file on the H: drive, which is a personal network file that is not accessible by anyone other [than] the named individual and the system administrators. She has since removed those files from the network and transferred them to a thumb drive, which has been secured." Attached to the letter was a memorandum dated September 4, 2012, memorializing the screening policy that was effective as of the date of her employment and signed by Wolford as confirming her "understanding of the screening policy . . . and that [she has] had no discussions with anyone at the Attorney General's Office about any of the cases involving Michael Addison, beyond ensuring [her] and the Office's adherence to the Rules of Professional Conduct."

On November 9, 2012, the defendant filed a motion in this court for "partial remand for discovery regarding the adequacy of screening and other protective measures implemented by the Office of the Attorney General to protect confidential information relating to [the defendant's] representation by the Office of the New Hampshire Public Defender and the Appellate Defender." The motion asserted that "[w]ith discovery, a more complete record will be available on which to make definitive assessments of the protective measures at issue; and any relief that may be warranted." We granted the motion in part and remanded the case to the trial court "for the limited purpose of ruling upon the defendant's 'Motion for Discovery.'" The parties subsequently filed a joint statement that the discovery had been completed and that any additional relief, "in the form of discovery or otherwise," would be sought from this court. On July 15, 2013, the defendant filed the motion before us.

The defendant argues that we should "follow a line of cases that requires per se disqualification of an entire prosecutor's office from a defendant's case when (a) the defendant's attorney switches sides and joins the prosecutor's office in the middle of the case and (b) the defendant does not waive the conflict." Or, short of adopting such a rule, he argues that we should apply a per se rule in this case because under the circumstances presented, "the appearance of impropriety and the resulting harm to the perceived integrity of the criminal justice process are compelling grounds for per se disqualification of the Attorney General's [O]ffice." According to the defendant, such circumstances include: the prosecutor's office that Wolford joined "is trying to put the defendant to death"; she joined the criminal bureau's appeals unit "at the very time this case was on appeal"; Wolford was "deeply involved in developing appellate strategies"; and she "uploaded to the prosecutor's computer network a document containing confidential attorney work product relating to an important issue that has not yet been fully briefed in the appeal."

In the alternative, the defendant seeks disqualification of all members of the attorney general's office who were employed or associated with that office between the date Wolford commenced employment as a prosecutor in July 2012, and two months later when the defendant alleges that screening procedures were put in place. Finally, if he is required "to prove actual prejudice or the actual disclosure of confidential information," the defendant requests "additional discovery and fact finding under the supervision of a specially appointed master."

The State objects, arguing that a per se rule of disqualification "has been rejected by nearly every state that has considered the issue," would "directly conflict with the Rules of Professional Conduct," and would "severely chill the hiring and movement of attorneys in this small state, and create a disincentive for government employment." The State asserts that we "should reject the per

se rule, and instead adopt a rule that requires proof of an actual ethical violation – the sharing of confidential information – or a rule that creates a rebuttable presumption of prejudice." Because there is no claim of actual prejudice to the defendant and because any presumption of prejudice can be rebutted, the State argues that the motion to disqualify should be denied.

Preliminarily, we note that the State questions whether, under the Separation of Powers Doctrine, the judicial branch has the authority to disqualify the entire attorney general's criminal bureau from conducting the prosecution of the defendant. However, because we reject a per se rule of disqualification, and find that the State would prevail here under either the presumptive prejudice or actual prejudice approaches discussed below, we need not reach this constitutional issue. See State v. Wamala, 158 N.H. 583, 592 (2009) (court decides constitutional questions only when necessary).

We first address the defendant's argument that we should adopt a per se rule of disqualification. Under such a rule, an entire prosecutor's office must be disqualified from a case and a special prosecutor appointed when an attorney who previously worked on a defendant's behalf subsequently "switches sides" by joining the prosecutor's office handling the same case. See, e.g., People v. Stevens, 642 P.2d 39, 40-41 (Colo. Ct. App. 1981); State v. Croka, 646 S.W.2d 389, 393 (Mo. Ct. App. 1983); People v. Shinkle, 415 N.E.2d 909, 910 (N.Y. 1980). In cases where a per se rule of disqualification is followed, screening the attorney in question is generally not recognized as curative of the imputed conflict and disqualification of the office is required, regardless of whether any confidences were breached or any prejudice to the defendant resulted. See Whitaker v. Com., 895 S.W.2d 953, 955-56 (Ky. 1995) (if the switching attorney "engaged in a substantial and personal participation in the defendant's case," the defendant need not show prejudice); Croka, 646 S.W.2d at 393 (where switching attorney "acquired knowledge about the case" from the defendant while acting as his appointed counsel, when attorney joined the prosecutor's office, "that office was thereby disqualified from prosecuting the case irrespective of the assumed facts that [the attorney] revealed no confidences and did not himself participate in the prosecution"). A small minority of jurisdictions have applied a per se rule. See State v. Pennington, 851 P.2d 494, 497 (N.M. Ct. App. 1993) (citing cases from eight jurisdictions).

The majority of jurisdictions that have addressed this issue have declined to apply a per se rule. See id. at 498 (citing cases from more than twenty jurisdictions). Several reasons have been given for rejecting such a rule. One reason is an unwillingness to presume "that prosecutors would violate a clear mandate (that the disqualified employee be isolated from all involvement in the prosecution) and then lie about such violation." Id. Another reason is that a per se rule "would unnecessarily limit mobility in the legal profession and

inhibit the ability of prosecuting attorney's offices to hire the best possible employees . . . ." State v. Kinkennon, 747 N.W.2d 437, 444 (Neb. 2008); see State v. Jones, 429 A.2d 936, 942-43 (Conn. 1980) (per se rule "would result in many unnecessary withdrawals, limit mobility in the legal profession, and restrict the state in the assignment of counsel where no breach of confidentiality has in fact occurred"), overruled on other grounds by State v. Powell, 442 A.2d 939 (Conn. 1982). Other reasons include that a per se rule mandates disqualification of a prosecutor's office based solely upon an appearance of impropriety with no analysis of the facts before the court, and fails to recognize any distinction between lawyers engaged in private practice and prosecutors engaged in constitutionally- and statutorily-mandated duties on behalf of the public. See State v. Camacho, 406 S.E.2d 868, 874-75 (N.C. 1991).

We join the majority of jurisdictions and reject application of a per se rule in all cases. We agree with a number of other courts that employ "a more flexible, case-by-case approach," Lux v. Com., 484 S.E.2d 145, 151-52 (Va. Ct. App. 1997), in which "the circumstances of a particular case" are evaluated to determine "whether disqualification of the entire office" is required. Kinkennon, 747 N.W.2d at 443. "Under this approach, courts consider, among other things, whether the attorney divulged any confidential information to other prosecutors or participated in some way in the prosecution of the defendant." Id. These jurisdictions are generally of the view that the entire office need not be disqualified if the attorney who had previously worked for the defendant "is isolated from any participation in the defendant's prosecution." Pennington, 851 P.2d at 498; see Kinkennon, 747 N.W.2d at 443; State v. McClellan, 216 P.3d 956, 960 (Utah 2009); Lux, 484 S.E.2d at 151-52.

The defendant argues that even if we decline to adopt a per se rule in all cases, we should apply such a rule in this case because Wolford was "deeply involved in developing appellate strategies" and she joined the attorney general's office "at the very time this case was on appeal." However, as other jurisdictions have recognized, when a defense attorney first becomes involved in a case at the appellate level and subsequently joins the prosecutor's office, the danger of prejudice to a defendant is lessened because the prosecutors are bound by the facts in the appellate record. As one court explained,

> When a defendant's lawyer switches sides, the principal danger is that information supplied in confidence will be used to the defendant's disadvantage. That danger is greatest when the lawyer switches sides prior to trial, and is in a position to use confidential information in his formulation of strategy and development of the facts. Resulting prejudice would be impossible to assess. The danger of prejudice is far less when a prosecutorial

6

conflict arises during appellate proceedings. At that stage, the prosecution has far less discretion; its role is to answer arguments made by the defendant.

Pisa v. Com., 393 N.E.2d 386, 390 (Mass. 1979) (citations omitted); see People v. Rankin, 540 N.Y.S.2d 628, 629 (N.Y. App. Div. 1989) (no risk of abuse of confidence when district attorney will be bound by the facts appearing in the record on appeal and thus cannot take advantage, to the defendant's prejudice, of any facts outside the record but within the knowledge of the switching attorney); Com. v. Harris, 460 A.2d 747, 749 (Pa. 1983) (where the defense attorney enters the case at the post-trial level and later joins the prosecutor's office, "a defendant must show an actual impropriety in order to establish the requisite prejudice"). Here, Wolford had no involvement in the defendant's case at the pre-trial or trial stages and participated in a limited aspect at one preliminary phase of the defendant's multi-phased appeal approximately three years before joining the attorney general's office.

Among courts that reject a per se rule of disqualification, several have held that a defendant's former attorney's subsequent affiliation with the prosecutor's office creates a presumption that confidences will be shared or that an appearance of impropriety has been shown, but the presumption can be rebutted by a showing that the disqualified attorney has been effectively screened from the ongoing prosecution. See, e.g., Lux, 484 S.E.2d at 152; McClellan, 216 P.2d at 961; People v. Davenport, 760 N.W.2d 743, 749 (Mich. Ct. App. 2008). "The rebuttable presumption of shared confidences . . . avoids the drastic result of disqualifying an entire [prosecutor's] office based on only the appearance of impropriety . . . while at the same time ensuring the rights of the accused are protected." McClellan, 216 P.2d at 961. One obvious problem with the presumptive approach is that presumptions generally are employed in situations where, in common experience, the presumed fact generally or naturally can be expected to follow if the predicate fact is shown to exist, see Rhode Island v. Massachusetts, 45 U.S. 591, 600 (1846); Osorio v. Dole Food Co., 665 F. Supp. 2d 1307, 1328 (S.D. Fla. 2009), aff'd, 635 F.3d 1277 (11th Cir. 2011), yet we are aware of no empirical or other evidence suggesting that members of the bar are typically or frequently inclined to disregard their ethical obligations when they switch employment. Thus, we are not persuaded to adopt the rebuttable presumption approach in this case.

However, even if we assume without deciding that the presumptive approach is applicable to this case, such assumption is of no benefit to the defendant because, as explained below, the record demonstrates that the State has definitively rebutted any presumption that the defendant was prejudiced by Wolford's switch of employment. Because we hold that the record before us, including the State's submissions, demonstrates that the defendant has

7

suffered no prejudice as a result of Wolford's change of employment from the public defender's office to the attorney general's office, we need not decide whether there are circumstances in which a rebuttable presumption of prejudice would be warranted.

The defendant acknowledges that "a timely and effective screening policy . . . serve[s] as a presumptive safe harbor from office-wide disqualification." He argues, however, that "for reasons that are incomprehensible, nothing approaching an effective screening procedure was put into place [here] for approximately two months." We disagree.

As set forth above, the attorney general's letter of October 2, 2012, describes the screening policy that was in place when Wolford began employment in July 2012. That policy was memorialized on September 4, 2012. The State has submitted a memorandum signed by each of the five attorneys involved in the defendant's prosecution acknowledging that Wolford was screened from the defendant's case and that none of them "have . . . discussed, and will not discuss, with [Wolford] any of Mr. Addison's cases." In addition, the State submitted affidavits from all five of the attorneys. Three attested that since Wolford joined the criminal justice bureau, they "have had no communication with [her] regarding Michael Addison, or any of the cases that involve Mr. Addison," nor have they "seen any written material created by Attorney Wolford regarding Mr. Addison" or "shared with Attorney Wolford any paper or electronic records regarding Mr. Addison." The fourth attorney attested that with the exception of a conversation with Wolford on the first day of her employment with the attorney general's office "regarding the screening policy that applied to her," he has had "no communication with Attorney Wolford regarding Michael Addison, or any of the cases that involve Mr. Addison." The fifth attorney attested that "with one exception, [she has] had no communication with Attorney Wolford regarding Michael Addison, or any of the cases that involve Mr. Addison. The one exception occurred either one weekend or one evening, Attorney Wolford asked [her] what [she] was working on, and she said 'Addison,' and the conversation ended there."

The State has provided affidavits from every other lawyer, paralegal, victim/witness advocate, investigator, and legal secretary employed in the criminal justice bureau since Wolford became employed there, attesting that, except for conversations related to screening, the Rules of Professional Conduct, or responding to discovery on the issues presented in the motion to disqualify, he or she has had no communication with Wolford about the defendant or the defendant's case. The State has also provided affidavits from employees in the Office of Information Technology, responsible for the support of the executive branch agencies, which attest that none of the limited number of people with the authority to access Wolford's "h:\drive" did so. In addition,

Wolford, who retained independent counsel, submitted an affidavit in which she attests, among other things, that she "did not share the fact of the existence of, or the contents of" the files on her "H: drive" and that she has "never spoken with anyone at the [attorney general's office] about Mr. Addison, my work on his case, or any other aspect of his case." She further attests that, "Likewise, no one at the [attorney general's office] has ever attempted to speak to me about the case except to obtain information to respond to the discovery conducted pursuant to [the] disqualification motion."

We conclude that the State has demonstrated that it implemented screening procedures that have prevented the disclosure of any confidential information about the defendant's case from Wolford to other prosecutors in the attorney general's office. See United States v. Goot, 894 F.2d 231, 233, 235-37 (7th Cir. 1990) (both the disqualified attorney and others in the office affirmed under oath that discussion about the case was prevented, thereby rebutting the presumption of shared confidences); State ex rel. Tyler v. MacQueen, 447 S.E.2d 289, 292-93 (W. Va. 1994) (affidavits by prosecuting attorney and member of office who previously represented defendant were sufficient to prove existence of effective screening procedures); Kinkennon, 747 N.W.2d at 445 (to establish effective screening, "at a minimum, the disqualified lawyer should acknowledge the obligation not to communicate with any of the other lawyers in the office with respect to the matter" and "the other lawyers in the office who are involved with the matter should be informed that the screening is in place and that they are not to discuss the matter with the disqualified lawyer").

Accordingly, we hold that disqualification of the entire attorney general's office in this case is not warranted. See State v. Walters, 241 S.W.3d 435, 438 (Mo. Ct. App. 2007) ("From the record, we see no indication that [the defendant's former attorney] used anything gathered from his previous representation of [the defendant] to [the defendant's] disadvantage."); State v. Fitzpatrick, 464 So. 2d 1185, 1188 (Fla. 1985) (imputed disqualification of entire prosecutor's office is unnecessary "when the record establishes that the disqualified attorney has neither provided prejudicial information relating to the pending criminal charge nor has personally assisted, in any capacity, in the prosecution of the charge"). Given the record before us, and our conclusions herein, we also deny the defendant's request to conduct additional discovery.

Motion to disqualify denied.

DALIANIS, C.J., and HICKS, CONBOY, LYNN and BASSETT, JJ., concurred.

9