# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: JUNE 17, 2010
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

### 2008-SC-000847-MR

SHARON DALE GREER                                            APPELLANT

ON APPEAL FROM LINCOLN CIRCUIT COURT
V.                        HONORABLE DAVID A. TAPP, JUDGE
NO. 2008-CR-00005

COMMONWEALTH OF KENTUCKY                      APPELLEE

**MEMORANDUM OPINION OF THE COURT**

**AFFIRMING AND REMANDING WITH DIRECTION
PURSUANT TO RCr 10.10**

Sharon Dale Greer appeals as a matter of right from a judgment of the Lincoln Circuit Court entered upon a jury verdict convicting him of first-degree assault, first-degree wanton endangerment, and of being a second-degree[1] persistent felony offender (PFO). Greer's assault conviction stems from his shooting his ex-girlfriend two times and his wanton endangerment conviction stems from his firing the gun in close proximity to the assault victim's young granddaughter. In accord with the jury's recommendation, Greer received an enhanced sentence of life imprisonment for the assault conviction and ten

---

[1] Although the final judgment states that Greer was convicted of being a *first*-degree PFO, this appears to be a typographical error as it is clear from the record that Greer was indicted and found guilty of being a *second*-degree PFO.

years imprisonment for the endangerment conviction. Although the jury recommended that the sentences run consecutively, the trial court properly ran the sentences concurrently. *See Mabe v. Commonwealth,* 884 S.W.2d 668 (Ky. 1994).

On direct appeal to this Court, Greer raises three claims of error: 1) that the trial court erred in refusing to give an instruction on extreme emotional disturbance (EED); 2) that KRE 404(b) evidence of prior bad acts was improperly admitted; and 3) that the Commonwealth offered false evidence during the sentencing phase of Greer's trial. We reject each of the foregoing contentions and affirm Greer's conviction and sentence.

However, we note that the judgment appears to contain a clerical error and direct the trial court to correct the error set out below pursuant to RCr 10.10.

**RELEVANT FACTS**

Appellant, Sharon Dale Greer, and the assault victim, Sandra Mullins, began a romantic relationship in 2006. The couple soon began living together, at first in Greer's camper, and later, part-time in the camper and part-time in a home owned by Mullins, which the two were remodeling. The remodeling, in part, was for the purpose of enhancing access for Mullins' ailing aunt, who eventually moved in so that Mullins could care for her. After Mullins' aunt moved into the home, the relationship between Greer and Mullins became increasingly strained, and ultimately terminated with Mullins' request for Greer to move out in November 2007. Greer moved into the camper on the same

property temporarily, but Mullins forced him to move out of the camper by cutting off the electricity. At that point, Greer reluctantly moved off the property, but he continued to contact Mullins frequently with pleas of reconciliation and often drove back and forth on the road in front of Mullins' home. In the meantime, Mullins continued to care for her aunt around the clock during the week. On the weekends, Mullins' son and daughter-in-law would relieve her, and she would stay in the camper located on the same property.

In early January 2008, Mullins' daughter-in-law was in the house and the electricity started flashing on and off. She called Mullins to report the problem and Mullins drove to the residence, bringing her two-year-old granddaughter with her. When Mullins exited the vehicle, but before she got her granddaughter out of the car, she saw Greer "hunkered beneath the porch." Greer then pointed a sawed-off shotgun at her and began ranting about why she had left him. Mullins begged Greer for her life and all the while Mullins' granddaughter, still in the car just a few feet away, was screaming. Mullins' daughter-in-law came out onto the porch, but complied with Mullins' immediate request to go back into the house, lock the door, and call the police. After assuring Greer that she would not call the police if he let her go, Mullins began to back away from Greer, at which point he shot her. After Greer loaded another shell and shot Mullins a second time, she pretended to be dead and Greer fled the scene.

Two police officers responded to the scene. One of the officers dialed a cell phone number that was believed to be Greer's. Someone picked up the call but did not say anything. The officer proceeded to identify himself and ask for Greer. The officer reminded Greer that the two of them knew each other and then told Greer that he "needed to take care of this." Greer replied, "How's Sandy [Mullins]?" The officer answered that Mullins was being transported to the hospital for her injuries, but that she was alert. He then tried to get Greer to divulge his location before things got any worse. Greer responded, "I'm not going back," and ended the call.

The police soon located Greer's abandoned vehicle and began a search of the nearby wooded area. One of the officers discovered Greer sitting on a log with a gun resting on his leg. Although it is unclear whether the act was deliberate or accidental, Greer shot himself in the face and lost an eye as a result.

Subsequently, Greer was charged with first-degree assault for the shooting of Mullins and first-degree wanton endangerment for firing the gun in close proximity to Mullins' granddaughter. The jury found Greer guilty of both offenses and found him guilty of being a second-degree PFO. In accord with the jury's recommendation, Greer was sentenced to life imprisonment for the assault conviction and ten years imprisonment for the wanton endangerment conviction. Greer seeks reversal of his convictions and sentence, urging that he was entitled to an instruction on extreme emotional disturbance (EED). He also asserts that admission of a statement that should have been excluded by

4

KRE 404(b) resulted in reversible error. Finally, Greer argues that certain statements elicited by the prosecutor regarding good-time credits constitute palpable error. After careful review, we find no merit in Greer's claims of error.

## ANALYSIS

### I. There Was No Error in the Trial Court's Refusal to Instruct the Jury on Extreme Emotional Disturbance.

Certain charged offenses may be reduced in degree if the offense was committed under the influence of extreme emotional disturbance. KRS 508.040(1). One of those offenses is first-degree assault where the charge is based upon the theory that the defendant intentionally caused serious physical injury to another by means of a deadly weapon or dangerous instrument. KRS 508.010(1)(a). Because Greer was charged with first-degree assault upon this theory, he contends that he was entitled to an EED instruction. However, even though the statute provides that a defendant so charged "may establish in mitigation that he acted under the influence of extreme emotional disturbance," KRS 508.040(1), entitlement to an EED mitigation instruction is not automatic, but rather, is dependent upon the presentation of evidence sufficient to support such instruction. *Talbott v. Commonwealth*, 968 S.W.2d 76 (Ky. 1998). In explaining the concept of EED, this Court has stated:

> There must be evidence that the defendant suffered "a temporary state of mind so enraged, inflamed, or disturbed as to overcome one's judgment, and to cause one to act uncontrollably from [an] impelling force of the extreme emotional disturbance rather than from evil or malicious purposes." *McClellan v. Commonwealth*, 715 S.W.2d 464, 468-69 (Ky. 1986). "[T]he event which triggers the explosion of violence on the part of the criminal defendant must be sudden and

5

uninterrupted." *Foster v. Commonwealth*, 827 S.W.2d
670, 678 (Ky.1991).

*Greene v. Commonwealth*, 197 S.W.3d 76, 81 (Ky. 2006).

In the case at bar, Greer presented no evidence of a triggering event nor was there evidence that he suffered an enraged, inflamed, or disturbed state of mind that compelled his criminal actions. Greer did not take the stand, but he alleges that sufficient evidence of EED was introduced through other witnesses. Specifically, he highlights other witnesses' testimony concerning his persistent attempts to communicate with Mullins after their breakup, aimed at persuading her to reconcile, as well as testimony that he was seen frequently driving up and down the road in front of Mullins' home. Lastly, Greer points to Mullins' testimony, describing Greer's look or demeanor immediately prior to the shooting as "wild."

We agree with the trial court that Greer failed to present evidence sufficient to warrant an EED instruction. The trial court explained:

> The evidence does not demonstrate that he was enraged, inflamed or disturbed. Other than the evidence that Greer appeared "wild," a characterization of his appearance by Mullins in the moments before Greer shot her the first time, no evidence even hints at a bases for an EED instruction. . . . No testimony establishes that Greer acted uncontrollably. To the contrary, at one point, immediately prior to the shooting, Greer seemed to objectively weigh the advantages of not shooting Mullins in exchange for her promise not to notify law enforcement of his threatening conduct. . . . Moreover, the evidence establishes that in the period preceding the shooting, though the parameters of the period cannot be identified with certainty, Greer actually laid in wait for Mullins to appear. Uncontroverted evidence suggests he parked his vehicle some distance away, that he

6

concealed himself in the storage shed, and under the porch immediately adjacent to the house, and that he did all of those things with the forethought to arm himself beforehand.

Greer argues that the mere fact that he lay in wait, implying premeditation, does not automatically preclude entitlement to an EED instruction. We agree provided that competing evidence is introduced tending to show EED. *Holland v. Commonwealth*, 114 S.W.3d 792 (Ky. 2003). But, again, we must agree with the trial court that such evidence was not presented here.

In his brief to this Court, Greer identifies the triggering event for his EED as "a traumatic breakup" or "rejection." However, "evidence of mere 'hurt' or 'anger' is insufficient to prove extreme emotional disturbance." *Talbott*, 968 S.W.2d at 85 (*citing Thompson v. Commonwealth*, 862 S.W.2d 871 (Ky. 1993)). Furthermore, there must be a reasonable explanation or excuse for the claimed EED. *McClellan v. Commonwealth*, 715 S.W.2d 464 (Ky. 1987). The reasonableness of the explanation or excuse "is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be." KRS 507.020(1)(a). However, Greer offered no evidence that his perception of the situation or circumstances was somehow altered. A romantic breakup that upset the defendant, even if traumatic, is simply insufficient standing alone, either to constitute a triggering event or to supply a reasonable explanation for the purported EED.

Greer further attempts to support his argument by comparing his case to *Holland v. Commonwealth, supra.* We see little similarity in the two cases. In

7

*Holland*, the defendant shot her boyfriend and his ex-wife, who were attempting to reconcile. The evidence supporting an EED instruction for Holland included her recent repeated suicide attempts and expert medical testimony that the prescribed pain medications that she was taking at the time of the shootings as well as diagnosed psychiatric conditions could have altered her perception. Further, her behavior in the few days preceding the shooting supported the EED instruction. Specifically, Holland was taking the pain medication as a result of a recent back surgery. Although her boyfriend (ultimately one of the victims) promised to stay with her during her recovery, she awoke one night and could not find him. She drove to his apartment and found him in bed with his ex-wife. The confrontation ended when her boyfriend physically threw her down the stairs and out of the house. Holland went to the hospital for her injuries and the evidence revealed that she had proceeded to run errands the day thereafter while still in her hospital gown. There was also testimony that on the morning of the shooting, Holland was groggy and incoherent. After the shooting, Holland fled to her sister's residence in another state, but upon arrival, immediately called the Kentucky police and confessed to the shootings. Given the foregoing, it is understandable that this Court determined that Holland should have received an instruction on EED.

We fail to discern, however, anything but a stark contrast between the evidence presented in *Holland* and the evidence, or lack thereof, presented here. Although *Holland* did explain that the notion of a triggering event was broad enough to include "the cumulative impact of a series of related events,"

8

*id.* at 807 (*quoting Fields v. Commonwealth*, 44 S.W.3d 355, 359 (Ky. 2001)), there was, in fact, evidence presented in that case of an uninterrupted series of emotionally charged events, each one potentially increasing Holland's emotionally disturbed state of mind. We do not find *Holland* to be persuasive here where the evidence demonstrated nothing more than an uninterrupted reaction to a single occurrence – a bad breakup. At best, the "series" of events would be Mullins' ejecting Greer from the property and refusing to reconcile with him. Nor do we agree with Greer that the act of shooting himself when confronted by the police officer in the woods was sufficient to support an EED instruction. The officer who witnessed the shot testified that he believed the gun accidentally fired, but conceded on cross-examination that it may have been deliberate. Regardless, there was no evidence presented of a triggering event and there, likewise, was no evidence presented to support that Greer's purported EED was the result of a reasonable explanation or excuse, even from Greer's own viewpoint. Accordingly, we affirm the trial court's ruling as Greer did not present evidence sufficient to warrant an instruction on EED.

## II. There Was No Error in the Admission of Greer's Statement that "I'm not going back."

As noted above, when the officer called Greer's cell phone just after the shooting and asked for Greer's location, Greer's response just before ending the call was "I'm not going back." Greer contends that the admission of this statement was improper under KRE 404(b) because it suggested that Greer had previously been incarcerated. This issue is preserved by Greer's contemporaneous objection to introduction of the statement. KRE 404(b)

9

prohibits evidence of other crimes, wrongs, or bad acts offered to prove the character of a person. However, we agree with the trial court that, absent additional evidence suggesting that the statement was made in reference to a prior incarceration, it was too ambiguous to be characterized as a reference to a prior bad act under KRE 404(b). As the trial court pointed out, "back" could have had multiple meanings, such as "back to the scene of the crime," rather than "back to prison." Further, even accepting Greer's argument that the likely interpretation of the statement suggested that Greer had been incarcerated in the past, this vague and fleeting reference would not constitute reversible error. The admission of evidence is subject to the trial court's discretion, *Matthews v. Commonwealth*, 163 S.W.3d 11 (Ky. 2005), and we discern no abuse of that discretion here.

### III. There Was No Error in the Introduction of Evidence Concerning Good-Time Credit in the PFO Phase of Trial.

Greer contends that the Commonwealth used false evidence when it informed the jury that he would be entitled to good-time credit when, in fact, his status as a violent offender, KRS 439.3401(4) precludes him from receiving any good-time credit. A review of the record confirms the Commonwealth's position on this issue to the effect that Greer has mischaracterized the proceedings by failing to provide the proper context for the testimony cited in support of his argument. Specifically, at defense counsel's request, Greer's proceedings were trifurcated. The first phase was the guilt phase for the assault and endangerment charges. The second phase was the guilt phase for

10

the PFO charge. And the final phase consisted of penalty determination on both the underlying offenses as well as the PFO enhancement.

During the second phase (PFO guilt phase), the Commonwealth elicited testimony from a probation and parole officer concerning good-time credit. However, two of the required elements of the PFO charge were that Greer had previously been convicted of a felony and that he had completed service of the sentence for that felony within five years prior to the date he committed the current felonies. KRS 532.080(2). The testimony concerning good-time credit was elicited for the purpose of establishing Greer's date of release or serve out on a previous manslaughter sentence and to explain to the jury how Greer served out his previously imposed sentence before the full period of time imposed by the sentence had elapsed. There was no suggestion during this testimony that Greer would be eligible for good-time credit during incarceration for the current offenses. And, in fact, during the third phase (the penalty phase), the Commonwealth elicited testimony concerning Greer's status as a violent offender and the relevance of this status inasmuch as it would require Greer to serve eighty-five percent (85%) of any sentence imposed before he would be eligible for parole. There was no mention of good-time credit in the penalty phase.

In his reply brief to this Court, Greer maintains that his argument was not a mischaracterization because the good-time credit evidence offered in the PFO phase would have left the jury with the impression that Greer would be entitled to good-time credit for the current offenses. Specifically, the previous

11

felony was also a violent offense, but at the time of Greer's previous conviction, violent offenders were not precluded from the receipt of good-time credit. Because the jury was not made aware of this change in the law, Greer argues that the good-time credit testimony misled the jury to assume that Greer was eligible for good-time credit despite his violent offender status. At any rate, Greer concedes that the issue is unpreserved and requests palpable error review.

To constitute palpable error, a defendant must demonstrate the "probability of a different result or error so fundamental as to threaten a defendant's entitlement to due process of law." *Martin v. Commonwealth*, 207 S.W.3d 1, 3 (Ky. 2006). Greer's assertions come nowhere near meeting this standard. Any connection between the evidence offered to prove the PFO charge and its speculative impact upon the jury in the penalty phase is remote at best. Not only has Greer failed to support his assertion that the Commonwealth's evidence was "false," he has failed to offer more than mere speculation that the jury may have been misled. Greer could have easily clarified the issue of which he now complains during the penalty phase. However, notwithstanding his failure to offer such clarification, the speculation that the jury made the remote connection that Greer now discerns is simply insufficient to merit relief.

## IV. The Trial Court is Directed to Correct a Clerical Error in the Judgment.

Although not noticed by either party, the trial court's judgment twice refers to Greer's *first*-degree PFO conviction when, in fact, Greer was adjudged

12

a PFO in the *second* degree. Although Greer was indicted on two counts of second-degree PFO, implying that he may have had more than one prior felony conviction, in which case a first-degree PFO charge could have been appropriate, evidence of only one prior felony conviction was introduced and the jury was properly instructed on second-degree PFO. Having verified in the record that the jury was also properly instructed on sentencing options in accord with Greer's second-degree PFO status, the erroneous designation of first-degree PFO in the judgment appears to be a mere clerical error. As the indictment, instructions, jury's verdict, and sentencing comport with second-degree PFO, the error could not have been "the deliberate result of judicial reasoning and determination," but rather a clerical error, subject to correction by the trial court at any time under RCr 10.10. *Hutson v. Commonwealth*, 215 S.W.3d 708 (Ky. App. 2006). RCr 10.10 allows the trial court to correct a clerical error in its judgment at any time, even while on appeal with leave of the appellate court. Accordingly, we affirm the trial court's judgment in all respects, but direct the trial court to correct the clerical error pursuant to RCr 10.10.

## CONCLUSION

The trial court properly determined that Greer failed to present evidence warranting an instruction on extreme emotional disturbance. Additionally, Greer's vague statement to the police officer, "I'm not going back," did not introduce evidence of a prior bad act and, therefore, was not inadmissible under KRE 404(b). Nor was there error, let alone palpable error, in the

13

admission of testimony concerning good-time credit, particularly where the testimony was properly elicited to prove an element of the PFO offense during the second phase of the three phase trial. Accordingly, Greer's convictions and sentences are affirmed but the judgment and sentence must be vacated and remanded for correction. Pursuant to RCr 10.10, the trial court is directed to correct the clerical error in the judgment, replacing first-degree with second-degree in reference to Greer's PFO status.

All sitting. All concur.

COUNSEL FOR APPELLANT:

Erin Hoffman Yang
Assistant Public Advocate
Department of Public Advocacy
100 Fair Oaks Lane, Suite 302
Frankfort, KY 40601

COUNSEL FOR APPELLEE:

Jack Conway
Attorney General of Kentucky

Jason Bradley Moore
Assistant Attorney General
Office for Criminal Appeals
Office of the Attorney General
1024 Capital Center Drive
Frankfort, KY 40601-8204