**NOT RECOMMENDED FOR PUBLICATION**
File Name: 18a0249n.06

**No. 14-5994**

**UNITED STATES COURTS OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
May 23, 2018
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| KURT ROBERT SMITH, | ) | |
| | ) | |
| Petitioner-Appellant | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF KENTUCKY |
| COOKIE CREWS, Warden, | ) | |
| | ) | |
| Respondent-Appellee. | ) | OPINION |
| | ) | |

---

**BEFORE: WHITE and STRANCH, Circuit Judges; MICHELSON, District Judge.**[*]

**JANE B. STRANCH, Circuit Judge.** Kurt Robert Smith, a Kentucky prisoner represented by counsel, petitions the court for a writ of habeas corpus under 28 U.S.C. § 2254. A jury convicted Smith of the wanton murder of his infant son, and he was sentenced to life imprisonment. His conviction and sentence were affirmed on direct appeal and collateral review, and the district court denied his § 2254 petition, finding the state court's determination that trial counsel's performance was not deficient to be a reasonable application of *Strickland v. Washington*, 466 U.S. 668 (1984). We granted a certificate of appealability (COA) to Smith on two ineffective assistance claims, one regarding counsel's failure to investigate a mental health defense and the other her failure to investigate other mitigating evidence.

---

[*]The Honorable Laurie J. Michelson, United States District Judge for the Eastern District of Michigan, sitting by designation.

Despite reservations about the adequacy of Smith's representation in his criminal trial, we **AFFIRM** under the deferential standards of the Antiterrorism and Effective Death Penalty Act (AEDPA)**.**

## I.      BACKGROUND

On the evening of March 20, 2001, Smith, then seventeen years old, was taking care of his six-week-old son, Blake, at his father and step-mother's home. *Smith v. Commonwealth*, No. 2008-CA-001135-MR, 2009 WL 2901223, at *1 (Ky. Ct. App. Sept. 11, 2009). The baby, still recovering from an operation for a digestive problem, was up most of the night vomiting and crying. *Id.* At around 4:00 a.m. on March 21, Blake woke up crying. *Id.* Exhausted, Smith admittedly "lost it." *Id.* He shook his son back and forth and dropped him on the floor. *Id.* The baby cried and then appeared to fall asleep. *Id.* Unaware that he had caused Blake serious injury, Smith placed him back in his bassinet. *Id.* When Smith next checked on Blake, the baby "had lost his color" and "his lips had turned purple and blue," causing Smith to realize Blake was severely injured. *Id.* Later that morning, Smith's step-mother, after hearing an "abnormal" cry from Blake, found Smith holding his son and called 911. *Id.* Blake was pronounced dead on March 23, 2001. Medical evidence established that Blake had suffered fatal head injuries that were consistent with blunt force trauma and shaken-baby syndrome. *Id.*

At trial, Smith admitted he caused Blake's death. *Id.* The Commonwealth produced evidence, however, that Smith had initially attempted to conceal his guilt, and the jury heard testimony regarding previous questionable conduct by Smith towards Blake, including screaming and that the baby sustained a bruised nose while in Smith's care. *Id.* The jury convicted Smith of wanton murder, and he was sentenced to life imprisonment. *Id.* at *2. The Kentucky

Supreme Court affirmed his conviction on direct appeal. *Smith v. Commonwealth*, No. 2002-SC-0293-MR, 2003 WL 22415620 (Ky. Oct. 23, 2003).

Smith then filed a post-conviction motion, originally denied by the state trial court without an evidentiary hearing, alleging three claims of ineffective assistance from his trial counsel. *Smith*, 2009 WL 2901223, at *2. The Kentucky Court of Appeals affirmed in part, and reversed in part and remanded to the trial court for an evidentiary hearing on two of the ineffective assistance claims—one based on counsel's failure to investigate Smith's mental health at the time of the offense, and the other on her failure to investigate and present mitigation testimony at the penalty stage of the trial. *Smith v. Commonwealth*, No. 2006-CA-000064-MR, 2007 WL 1194688, at *5 (Ky. Ct. App. Apr. 13, 2007).

At the evidentiary hearing, held on October 4, 2007, Smith's trial counsel and four potential mitigation witnesses testified. *Smith*, 2009 WL 2901223, at *3. Smith's motion for funds to retain a mental health expert was held in abeyance pending determination of whether counsel's decision not to employ an expert was "trial strategy or an abdication of advocacy." *Id.* at *3.

Trial counsel, who had previously represented Smith in a case where he was charged with and acquitted of marijuana possession, explained her investigation and trial strategy. *Id.* She remembered talking to Smith's mother, father, stepmother, sister, stepbrother, and other family members and friends, and had "feelers" at the institution where Smith was incarcerated that would have alerted her to potential mental health issues. *Id.* at *3–4. She also reviewed documents related to Smith's background—his custodial evaluations, parents' divorce file, school records, juvenile transfer documents, and dispositional reports from two previous juvenile convictions. *Id.* at *3. Counsel admitted difficulty coming up with an effective strategy—

largely because there was no question as to Smith's guilt, and he had been contradictory and untruthful in prior statements to police. *Id.* She ultimately decided the best trial strategy would be to humanize Smith in front of the jury by showing that, while trying his best to parent a baby with medical problems, he was simply too young and immature for such responsibility and pressure, which caused him to "snap." *Id.* at *4. She also chose to put Smith on the stand in the hope that he would show genuine remorse—despite knowing that Smith was "never completely honest with her" about what had happened. *Id.* at *3–4.

When asked whether she had considered consulting a mental health expert, counsel testified that she deliberately decided not to because "[she] never saw anything that made [her] think he was suffering from a mental illness as defined by Kentucky law": there was no indication that Smith was suffering from a "mental illness or mental[] retardation" or "was becoming incompetent to stand trial" as understood by "Chapter 504" of the Kentucky Revised Statutes. Instead, she considered Smith to be exhibiting "antisocial behavior." Counsel also expressed concern that introducing evidence as to Smith's difficult home life and mental state would risk allowing the Commonwealth additional opportunities to diminish the jury's sympathy for Smith with unfavorable evidence of angry outbursts, juvenile drug convictions, and general maladaptive behavior. *Smith*, 2009 WL 2901223, at *4. She concluded that such a risk outweighed the potential reward of putting mitigating witnesses on the stand during sentencing. *Id.*

Following counsel's testimony at the evidentiary hearing, four other witnesses testified to Smith's troubled relationship with his parents and the negative effects that their divorce had on him. *Id.* at *5. They testified of Smith's inability to cope with stressful situations, and the physical and emotional abuse he received from his father and stepmother. Smith claims that

these witnesses, who had sent letters to the trial judge because his counsel was unresponsive to their communications, should have been called to give mitigation testimony at sentencing. *Smith*, 2009 WL 2901223, at *5.

The state trial court denied Smith's claims, finding that counsel's alleged errors were based on strategic trial decisions and that "[a]ny error complained of would not have resulted in a different outcome for [Smith]." Citing the two-pronged test of *Strickland*, 466 U.S. at 687, the Kentucky Court of Appeals affirmed on the deficiency prong without reaching the question of prejudice. *Smith*, 2009 WL 2901223, at *6–9. The Kentucky Supreme Court denied review.

Smith then petitioned for relief under § 2254 in the U.S. District Court for the Eastern District of Kentucky. The district court, adopting a magistrate judge's report and recommendations, denied relief on the merits, concluding that the Kentucky Court of Appeals did not apply *Strickland* unreasonably in finding that Smith's counsel was not deficient. *Smith v. Taylor*, No. 5:10-CV-91-KKC-HAI, 2014 WL 3513180, at *4 (E.D. Ky. July 16, 2014). We granted a limited COA on two issues:

> (1) whether the district court was correct when it ruled that the state court's denial of Smith's ineffective-assistance claim based on counsel's failure to investigate a mental health defense was a reasonable application of clearly established federal law; and (2) whether the district court was correct when it ruled that the state court's denial of Smith's ineffective-assistance claim based on counsel's failure to investigate mitigating evidence was a reasonable application of clearly established federal law.

*Smith v. Crews*, No. 14-5994 (6th Cir. Mar. 16, 2015).

## II.    STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act (AEDPA), habeas corpus relief may be granted on claims that were adjudicated in state court only if the state-court adjudication of the claim resulted in a decision that (1) "was contrary to, or involved an unreasonable

application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts." 28 U.S.C. § 2254(d). "We review de novo a district court's denial of a writ of habeas corpus." *Ramonez v. Berghuis*, 490 F.3d 482, 486 (6th Cir. 2007). "And where, as here, the district court has reviewed only trial transcripts and other court records, any factual determinations by the district court are also reviewed de novo." *Id.*

We granted Smith a COA on two ineffective assistance of counsel claims, to which federal courts apply the "unreasonable application" prong of § 2254(d)(1). *Mitchell v. Mason*, 325 F.3d 732, 738 (6th Cir. 2003) (citing *Harpster v. Ohio*, 128 F.3d 322, 327 (6th Cir. 1997)). A state-court decision is an unreasonable application of clearly established Supreme Court law when it "applies [Supreme Court] precedents to the facts in an objectively unreasonable manner." *Brown v. Payton*, 544 U.S. 133, 141 (2005) (citations omitted); *see Mitchell*, 325 F.3d at 738 ("[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." (quoting *Williams v. Taylor*, 529 U.S. 362, 411 (2000))). This is a "difficult to meet . . . and highly deferential standard . . . [that] demands that state-court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (internal citations and quotation marks omitted).

To establish ineffective assistance, Smith must show that his attorney's performance was deficient and that he was prejudiced as a result. *Strickland*, 466 U.S. at 687. Counsel's performance is deficient where it falls below an objectively reasonable standard. *Id.* at 688. This standard also is "highly deferential"—thus, "doubly so" on federal habeas review—and

requires us to "apply a strong presumption that counsel's representation was within the wide range of reasonable professional assistance." *Harrington v. Richter*, 562 U.S. 86, 104–05 (2011) (internal quotation marks omitted) (quoting *Strickland*, 466 U.S. at 689).

### III.    ANALYSIS

Smith argues that his trial counsel performed deficiently by failing to conduct a reasonable investigation into a possible mental health defense and into potential mitigation witnesses, and that the Kentucky Court of Appeals unreasonably applied *Strickland* when it determined otherwise.    On habeas review, the pivotal question is whether the state court's determination was a reasonable application of *Strickland*.    *See Harrington*, 562 U.S. at 101. Below, we analyze separately the reasonableness of the state court's determinations on the alleged deficiencies of Smith's counsel.

#### A.    Failure to Investigate Mental health Defense

The issue underlying the first ineffective assistance claim is the Kentucky defense of extreme emotional disturbance (EED), which, according to Smith, his trial counsel could have successfully pursued had she consulted a mental health expert.[1]    In Kentucky, a successful EED defense reduces the degree of an intentional homicide from murder to manslaughter.    *McClellan v. Commonwealth*, 715 S.W.2d 464, 468 (Ky. 1986).    Kentucky defines EED as "a temporary state of mind so enraged, inflamed, or disturbed as to overcome one's judgment, and to cause one to act uncontrollably from the impelling force of the extreme emotional disturbance rather than from evil or malicious purposes."    *Id.* at 468–69.    To constitute EED, there must be "a reasonable explanation or excuse" for the emotional state, as "determined from the viewpoint of

---

[1]Commentary to Ky. Rev. Stat. §§ 507.020 and 507.040 suggests that EED is available for intentional, but not wanton, murder.  However, the Supreme Court of Kentucky has discussed EED in a case involving wanton murder without hinting at the commentary's distinction. *Holland v. Commonwealth*, 466 S.W.3d 493, 503 (2015). We therefore proceed with the discussion assuming that Smith's assertion is correct.

a person in the defendant's situation under the circumstances as defendant believe them to be." *Id.* at 469. In other words, "there must be a triggering event—a 'sudden and uninterrupted' event that 'triggers the explosion of violence on the part of the criminal defendant.'" *Bowling v. Parker*, 344 F.3d 487, 500 (6th Cir. 2003) (quoting *Foster v. Commonwealth*, 827 S.W.2d 670, 678 (Ky. 1991)).

EED, which falls under Chapter 507 of the Kentucky Revised Statutes, is distinct from "incompetency," "insanity," and "mental illness," which are defined in Chapter 504.[2] *See McClellan*, 715 S.W.2d at 468. Accordingly, EED "is not established by evidence of insanity or mental illness." *Bowling*, 344 F.3d at 500 (quoting *Stanford v. Commonwealth*, 793 S.W.2d 112, 115 (Ky. 1990)). "It is the presence of adequate provocation . . . which is essential to a finding of EED," though mental illness "is entirely relevant to a subjective evaluation of the reasonableness of the defendant's response to the provocation." *Fields v. Commonwealth*, 44 S.W.3d 355, 359 (Ky. 2001).

Under *Strickland*, counsel "has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland*, 466 U.S. at 691. "[S]trategic choices made after less than complete investigation are reasonable

---

[2]Chapter 504 defines "incompetency to stand trial" as a "lack of capacity to appreciate the nature and consequences of the proceedings against one or to participate rationally in one's own defense," and an incompetent defendant cannot "be tried, convicted or sentenced so long as the incompetency continues." Ky. Rev. Stat. §§ 504.060(4), 504.090. "Insanity" is "a lack of substantial capacity to appreciate one's conduct or to conform one's conduct to the requirements of law," and it "absolves one of criminal intent and is therefore a complete defense." *McClellan*, 715 S.W.2d at 467–68; *see* Ky. Rev. Stat. §§ 504.030, 504.060(5). And "mental illness" means "a substantially impaired capacity to use self-control, judgment, or discretion which can be related to physiological, psychological, or social factors," but it "does not absolve one of criminal responsibility but entitles one so convicted to treatment." *McClellan*, 715 S.W.2d at 468; *see* Ky. Rev. Stat. §§ 504.060(6), 504.150.

precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.* at 690–91.

In *Williams v. Taylor*, the Supreme Court found that trial counsel's failure to "fulfill their obligation to conduct a thorough investigation" of the defendant's "nightmarish" background and mental state could not be "justified by a tactical decision" to focus on his remorse and cooperation with police, or to prevent comparatively meager unfavorable evidence—specifically, past juvenile records—from being admitted. 529 U.S. at 395–96, 398. Counsel in *Williams* ended his investigation based on a misunderstanding that state law prevented potentially mitigating records from being introduced. *Id.* at 395. If counsel had investigated, he would have found, among a "voluminous" amount of mitigating evidence, that the defendant was "borderline mentally retarded" and criminally neglected as a child, and that he was among the inmates "least likely to act in a violent, dangerous or provocative way" and had "thrive[d] in a more regimented and structured environment." *Id.* at 396.

The Supreme Court again "illustrat[ed] . . . the proper application of [*Strickland*]" in *Wiggins*, 539 U.S. at 522. Finding a state court's application of *Strickland* "objectively unreasonable," the Court explained that "[e]ven assuming [counsel] limited the scope of their investigation for strategic reasons, *Strickland* does not establish that a cursory investigation automatically justifies a tactical decision with respect to sentencing strategy. Rather, a reviewing court must consider the reasonableness of the investigation said to support that strategy" and "not only the quantum of evidence already known to counsel, but also whether the known evidence would lead a reasonable attorney to investigate further," measured objectively "under prevailing norms." *Id.* at 523, 527 (citing *Strickland*, 466 U.S. at 691). The Court faulted the state court for "merely assum[ing] that the investigation was adequate" when "counsel chose to abandon their

investigation at an unreasonable juncture, making a fully informed decision with respect to sentencing strategy impossible." *Id.* at 527–28.

The Government implies that *Williams* and *Wiggins* are not the clearly established law that the state courts should have applied because they apply only to the penalty stage of death-penalty cases. But *Strickland* itself was a death-penalty case, and neither the Supreme Court nor our circuit has drawn a distinction between capital and non-capital cases or the guilt and penalty stages of trial in applying the framework of *Strickland*. *See, e.g.*, *Harrington*, 562 U.S. at 101–07; *Berghuis v. Tompkins*, 560 U.S. 370, 389–91 (2010); *Ramonez*, 490 F.3d at 486–91; *Towns v. Smith*, 395 F.3d 251, 257–61 (6th Cir. 2005).

Smith maintains that his counsel's decision not to consult a mental health expert to explore the possibility of an EED defense was unreasonable, and thus her chosen strategy was not supported by sufficient investigation. He asserts that the evidence known by his counsel would lead a reasonable attorney to investigate further the possibility of an EED defense. *See Wiggins*, 539 U.S. at 527. In addition to the horrific nature of the crime itself, counsel knew that Smith had shown disturbing, antisocial behavior, likely stemming from his difficult childhood and relationship with his family, and that he had seen a therapist previously. Smith's parents had gone through a bitter divorce and custody battle that counsel believed had a negative impact on Smith, after which his home life continued to deteriorate. As Smith aged, he exhibited increasingly out-of-control behavior, such as angry outbursts, disruptiveness in the classroom, and picking up and slamming down a desk. Smith's juvenile record showed him to be a troubled adolescent who suffered from a drug-abuse problem, was "unhappy at home," and had difficulty "effective[ly] communicati[ng] within [his] family." Shortly before Blake's death, moreover, Smith's 16-year-old brother died in a car accident. Smith's mother additionally testified that she

told counsel that Smith needed a mental health evaluation because he had been abused mentally and physically in his father's household.

Counsel alluded to Smith's hardships in her testimony, stating her belief that he "snapped" when he killed his son and was in denial about the murder, and explaining that he refused to "come clean" or "open up" to her. In addition, despite her admitted difficulty in coming up with an effective defense, counsel recommended, and the court directed, that Smith receive "psychological, psychiatric, emotional, [or] mental health counseling, however you want to phrase it," in prison; in so recommending, she acknowledged that the "Department of Corrections," when they see Smith's history, "are going to want to reach out to him and provide him treatment."

Facing all of this evidence, counsel chose not to consult a mental health expert but instead to go to trial with "no defense" because, she testified, nothing suggested Smith suffered from "mental illness" or "incompeten[cy]." This explanation shows that she incorrectly believed an expert evaluation to be relevant only to defenses of incompetency, insanity, or mental illness under Chapter 504. *See Williams*, 529 U.S. at 395 (in finding deficient performance, noting counsel's misunderstanding that state law prevented mitigating records from being introduced).

The Kentucky Court of Appeals acknowledged the possible insufficiency of counsel's explanation that she did not consult an expert because there was no evidence to support a defense based on "mental illness." *See Smith*, 2009 WL 2901223, at *8. We share that concern. *See Harrington*, 562 U.S. at 106 ("Criminal cases will arise where the only reasonable and available defense strategy requires consultation with experts or introduction of expert evidence, whether pretrial, at trial, or both."). As counsel admitted, merely consulting with an expert to explore an EED defense did not risk making unfavorable evidence admissible because, at least at that time,

Kentucky Rule of Criminal Procedure 7.24(3)(B)(i) required notice of an expert evaluation only if "the defendant intends to introduce expert testimony relating to a mental disease or defect."

Applying the framework of *Strickland* and other Supreme Court cases interpreting it, we are inclined to conclude that counsel's purported strategic decisions on expert consultation were based on insufficient investigation because she failed to consult a mental health expert before choosing among her options. Without an expert consultation on Smith's mental health, counsel could not make an informed decision to forgo an EED defense in favor of her sympathy strategy. *See English v. Romanowski*, 602 F.3d 714, 728–29 (6th Cir. 2010) (finding counsel's failure to investigate a witness rendered unreasonable his decision not to call the witness for fear of unfavorable testimony); *see also Elmore v. Holbrook*, 137 S. Ct. 3, 8 (2016) (Sotomayor, J., dissenting from denial of certiorari) ("To the contrary, we have often emphasized that an attorney who learns some information about a defendant's background is under an obligation to pursue that information in order to 'mak[e] an informed choice among possible defenses.'" (citation omitted)).

But AEDPA requires us to recognize a second level of deference—not only to the choices made by counsel, but also to the decisions of state courts. Here, the Kentucky Court of Appeals found no error in the circuit court's conclusion that counsel's choice not to consult a mental health expert was not deficient performance, but instead the result of a reasonable "strategic trial decision." *Smith*, 2009 WL 2901223, at *7. Regarding counsel's testimony that "she saw no indications that [Smith] suffered from mental illness in her conversations and interactions with him and his family," the state court "acknowledge[d] that this explanation, standing alone, might not suffice to explain [counsel's] failure to more thoroughly investigate a mental health defense in this case." *Id.* at 8. Nevertheless, given counsel's concern that the "risk of allowing the

Commonwealth to introduce a plethora of damaging evidence against him," and because counsel's "defense was predicated on portraying Smith in as sympathetic a light as possible given that his role in Blake's death had been firmly established," the state court found counsel's concerns about damaging evidence and her strategy to be reasonable, even if they "perhaps could be second-guessed in hindsight." *Id.*

*Strickland* declares that "strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.* at 690–91. As described in *Wiggins*, a reviewing court must consider "not only the quantum of evidence already known to counsel, but also whether the known evidence would lead a reasonable attorney to investigate further, measured objectively under prevailing norms." 539 U.S. at 522 (internal citations omitted). The Kentucky Court of Appeals recognized the extent of the investigation that counsel carried out and the "full and conscientious effort to provide Smith with the best defense possible in the face of highly unfavorable facts." *Smith*, 2009 WL 2901223, at *8. The decision not to have a mental health evaluation conducted on Smith "perhaps could be second-guessed in hindsight but cannot be condemned as unreasonable or otherwise deficient." *Id.* Accordingly, the Kentucky Court of Appeals concluded that counsel "ma[d]e a reasonable decision that ma[de a] particular investigation unnecessary." *Id.* at *7 (quoting *Strickland*, 466 U.S. at 691). Although we do not necessarily agree with this conclusion, as discussed above, we cannot say that it was an objectively unreasonable application of Supreme Court precedent. *See Cullen*, 563 U.S. at 181 (Describing the habeas review standard for ineffective assistance claims as a "difficult to meet . . . and highly deferential standard . . . [that] demands that state-court decisions be given the benefit of the doubt." (internal citations and quotation marks omitted)). The governing standard impels us to

find that the state court did not unreasonably apply *Strickland* when it concluded that trial counsel did not provide ineffective assistance of counsel by failing to have a mental health evaluation conducted on Smith. As a result, we need not address prejudice.

**B.      Failure to Investigate Mitigating Witnesses**

Smith also argues that his counsel was ineffective for failing to investigate and present mitigating witnesses at sentencing. A trial counsel's failure to conduct "a reasonable investigation of a defendant's psychiatric history and family background and to present mitigating evidence to the jury at sentencing[] can constitute ineffective assistance"—even where counsel believes further investigation would be futile or where presenting the evidence may open the door to unfavorable evidence. *Poindexter v. Mitchell*, 454 F.3d 564, 577–78 (6th Cir. 2006) (internal quotation marks omitted) (quoting *Wiggins v. Smith*, 539 U.S. 510, 522–23 (2003)) (collecting cases). An investigation into mitigating evidence is unreasonable where defense counsel "failed to act while potentially powerful mitigating evidence stared them in the face . . . or would have been apparent from documents any reasonable attorney would have obtained." *See Bobby v. Van Hook*, 558 U.S. 4, 11–12 (2009) (citing *Wiggins*, 539 U.S. at 525; *Rompilla v. Beard*, 545 U.S. 374, 389–93 (2005)). A strategic decision not to present mitigating evidence after a thorough investigation, however, is "virtually unchallengeable." *Strickland*, 466 U.S. at 690.

Smith maintains that his counsel failed to conduct a reasonable investigation into mitigating witnesses before sentencing, and thus her uninformed decision not to present any mitigation witnesses to avoid opening the door to unfavorable evidence was unreasonable. At the evidentiary hearing, Smith presented four witnesses—his elementary school guidance counselor, Gay Cecil; his mother, Brenda Smith; his sister, Beverly Smith; and a family friend,

Donna Tudor—who testified about the negative effect that Smith's troubled home life and parents' divorce had on his mental state. Counsel never spoke to Cecil or Tudor, and Smith's mother and sister testified that counsel would not listen to what they had to say. At least some of these witnesses sent letters to the trial judge directly because they believed counsel was unresponsive.

The Government responds with the state court's finding that counsel talked to "Smith's mother, father, stepmother, sister, stepbrother, and a number of other family members and friends," and reviewed "a number of items relating to Smith's background and history, including custodial evaluations, his parents' divorce file, his school records, juvenile transfer documents, and dispositional reports from Smith's two prior juvenile convictions." *Smith*, 2009 WL 2901223, at *3. Counsel also averred that, "people knew where [she] was and how to get in touch with [her] if they had something they wanted to say. I would talk to anybody in this case and all my cases." Based on this investigation, counsel, who also had previously represented Smith in juvenile matters, claimed to be "fully aware" of the issues on which the witnesses at the evidentiary hearing testified. *Smith*, 2009 WL 2901223, at *3, *7–8.

Though this is a close question, under governing precedent, counsel's investigation into mitigation facts was not deficient. "The Supreme Court has found more limited investigations into a defendant's background justified where any evidence presented would have a double edge." *Carter v. Mitchell*, 443 F.3d 517, 532 (6th Cir. 2006) (citations and internal quotation marks omitted) (collecting cases). Counsel's investigation into and knowledge of Smith's background, family history, relevant documents, and witnesses, provided sufficient information for her to reasonably decide not to investigate additional mitigation witnesses.

The governing precedent likewise confirms that this information was sufficient for counsel to make a reasonable choice between the options of putting mitigation witnesses on the stand or not. That choice avoided opening the door to potentially unfavorable evidence, including Smith's criminal convictions and antisocial behavior. *See, e.g.*, *Carter*, 443 F.3d at 531–32 (Counsel's decision found reasonable "[g]iven the lack of mitigating evidence available in this case and the likelihood that the testimony of [the defendant's] family members would have done more harm than good."); *Clark v. Mitchell*, 425 F.3d 270, 286 n.6 (6th Cir. 2005) ("[C]ounsel made a strategic decision to limit testimony about [the defendant's] past in order to prevent 'opening-the-door' to evidence of [his] criminal background" that "supports the reasonableness of the [state court's] determination regarding the performance of defense counsel."); *Darden v. Wainwright*, 477 U.S. 168, 186 (1986) ("[T]here are several reasons why counsel reasonably could have chosen to rely on a simple plea for mercy from petitioner himself. Any attempt to portray petitioner as a nonviolent man would have opened the door for the State to rebut with evidence of petitioner's prior convictions. This evidence had not previously been admitted in evidence, and trial counsel reasonably could have viewed it as particularly damaging.").

The Kentucky Court of Appeals correctly identified and explored Smith's claim that counsel did not "seek out and use readily available mitigation witnesses during the penalty stage of trial." *Smith*, 2009 WL 2901223 at *8. The state court found reasonable counsel's fear "that presenting the mitigation testimony proposed by Smith risked painting him in an even more unfavorable light before the jury." *Id.* at *9. In light of the controlling authority and the doubly deferential AEDPA standard applicable to this ineffective assistance claim, we cannot say that the decision of the Kentucky Court of Appeals is an unreasonable application of governing law.

## IV.    CONCLUSION

We **AFFIRM** the district court's ruling that the Kentucky Court of Appeals did not apply Supreme Court precedent in an objectively unreasonable manner when it concluded on the claims before us that Smith's representation was not deficient.